**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 8 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellant,

v.

ALLEN HUNT and MICHELLE D.
JONES,

      Defendants-Appellees.

No. 99-1120

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 98-CR-380-WM)**

---

Sean Connelly, Attorney, United States Department of Justice, Denver, Colorado
(Thomas L. Strickland, United States Attorney, and Sheilah M. Rogers, Assistant United
States Attorney, Denver, Colorado, were on the brief) for Plaintiff-Appellant.

Charles Szekely, Assistant Federal Public Defender, Denver, Colorado (Peter Schild,
Boulder, Colorado and Michael G. Katz, Federal Public Defender, Denver, Colorado,
with him on the brief) for Defendants-Appellees.

---

Before **TACHA, HOLLOWAY** and **BRORBY**, Circuit Judges.

---

**HOLLOWAY**, Circuit Judge.

---

      A grand jury indicted Defendants-Appellees Allen Hunt and Michelle Jones

(Defendants) on 16 counts of theft from the mail in violation of 18 U.S.C. § 1708. During a bench trial, the district judge entered a judgment stating: "I find and conclude that the defendants are not guilty under the indictment as charged." As part of the judgment the district judge concluded that (1) the indictment alleged a theft from CTC Distributor's (CTC); (2) CTC was not part of the "mail" as required for a violation of 18 U.S.C. § 1708; and (3) the indictment failed to allege any other theft from the "mail," as had been suggested by the government. The government timely appeals . Defendants argue that the Double Jeopardy Clause bars the appeal. For reasons that follow, we agree. We therefore dismiss the government's appeal.

## I

As the district court observed, the facts are essentially undisputed. Cf. Appendix A to Appellant's Brief-in-Chief at 1. In 1998, Defendants worked at a CTC warehouse in Denver, Colorado. See id. at 2. CTC collects items being shipped by merchandisers to customers. Before delivering the items to CTC, a merchandiser places "mailing indicia" on the packages. CTC then sorts the packages and delivers them to the United States Postal Service's (Postal Service) bulk mailing center, which is located off CTC's premises. See id.

The Postal Service also operates a facility at CTC's warehouse, called a detached mailing unit. See id. A Postal Service employee maintains exclusive control over the detached mailing unit and randomly samples and verifies postage and sortation before

CTC sends packages to the bulk mailing center. See id. Although CTC houses the unit, CTC is not itself part of the unit. See id.

In early 1998, Defendants began using an "over-labeling" scheme to steal packages that were processed at CTC. See id. As part of the scheme, Defendants placed handwritten labels addressed to themselves over the pre-existing mailing indicia provided by the merchandiser. See id. at 2-3. CTC then delivered the over-labeled packages to the bulk mail center and the Postal Service ultimately delivered the packages to Defendants. See id. at 3. "Other than the implied potential that the relevant packages might have been randomly sampled by the [Postal Service] at the [detached mailing unit], the government failed to present evidence that the packages were subject to control and regulation or otherwise accepted as mail by the [Postal Service] at the time the over-labeling occurred." Id.

On December 1, 1998, the grand jury returned a superseding indictment against Defendants alleging 16 counts of theft from the mail in violation of 18 U.S.C. § 1708. See I App. Item 30 at 1. Each count of the indictment was almost identical and alleged:

> On or about [a date in 1998], in the State and District of Colorado, [Defendants], did steal, take and abstract, and by fraud and deception obtain, from and out of any mail, mail route, and authorized depository for mail matter, a package and things contained therein . . . from CTC distributors, a Detached Mailing Unit that works as a contractor between major mailing companies and corporations and the United States Postal

Service, in violation of Title 18, United States Code, Section 1708.[1]
See id. Defendants waived their right to a jury trial and, instead, opted for a bench trial. See, e.g., I App. Item 51 at 3. After the trial had begun, Defendants moved for acquittal. See id. at 6. According to Defendants the indictment alleged only one theft: theft from CTC. See id. at 6,10. The evidence, however, demonstrated that CTC was not part of the mail. See, e.g., id. Defendants argued that the government could not constructively amend the indictment to allege that the theft occurred instead when Defendants received the packages from the Postal Service. See id. Therefore, Defendants said they were entitled to an acquittal. See id. at 13.

The district court agreed. The court held that the indictment "language charges theft from CTC Distributors, a Detached Mailing Unit." See Appendix A to Appellant's Brief-in-Chief at 5. "The plain language of the indictment indicates that the Grand Jury concluded that the defendants stole from CTC Distributors and not at some later time." Id. "That conclusion is buttressed by the 'on or about' date of each count being tied to the date of 'over-labeling' rather than the later delivery." Id. The district court therefore held that the indictment alleged only theft from CTC.

"The government did not prove beyond a reasonable doubt that the CTC was the United States mail, a mail route, or an authorized depository when the over-labeling

---

[1] The only variations in the counts involved: (1) the dates, (2) the Defendants, and (3) the items stolen.

occurred" nor was CTC a detached mailing unit. Id. at 7. Indeed, "[t]he proof . . . does not eliminate doubt . . . that the packages did not reach the mail until they were delivered to the [Postal Service] Bulk Mailing Center." Id. Accordingly, the district court granted a judgment which it entitled "JUDGMENT OF ACQUITTAL." I App. Item 54. That judgment stated that "[t]he trial having proceeded to conclusion, and pursuant to the Decision, entered February 12, 1999, the Court rendered its verdict of finding the defendants, Allen Christopher Hunt and Michele Denise Jones not guilty of the charges contained in the superseding indictment." I App. Item 54.

## II

Title 18 U.S.C. § 3731 authorizes the government to appeal, inter alia, in these terms:

> from a decision, judgment, or order of a district court dismissing an indictment or information or granting a new trial after verdict or judgment, as to any one or more counts, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution.

Congress intended for this section "to remove all statutory barriers to Government appeals and to allow appeals whenever the Constitution would permit." United States v. Scott, 437 U.S. 82, 85 (1978) (citation and internal quotation marks omitted); see also United States v. Wilson, 420 U.S. 332, 337 (1975) (stating the same principle). Therefore, pursuant to 18 U.S.C. § 3731, our question is whether the Double Jeopardy

Clause bars this appeal.[2]

"The development of the Double Jeopardy Clause from its common-law origins thus suggests that it was directed at the threat of multiple prosecutions, not at Government appeals, at least where those appeals would not require a new trial." Wilson, 420 U.S. at 342. However, it is now well-settled that the Double Jeopardy Clause bars some government appeals: "A judgment of acquittal, whether based on a jury verdict of not guilty or on a ruling by the court that the evidence is insufficient to convict, may not be appealed and terminates the prosecution when a second trial would be necessitated by a reversal." Scott, 437 U.S. at 91 (omitting footnote); see also Smalis v. Pennsylvania, 476 U.S. 140, 145-46 (1986) (agreeing with ruling below that "the Double Jeopardy Clause bars a postacquittal appeal by the prosecution not only when it might result in a second trial, but if reversal would translate into further proceedings of some sort, devoted to the resolution of factual issues going to the elements of the offense charged.") (citation and internal quotation marks omitted). Accordingly, the Double Jeopardy Clause bars this appeal if: (1) there was in effect an acquittal below, and (2) if reversal would require such a second fact-finding proceeding on remand as comes within the Smalis parameters.

---

[2] In their motion to dismiss the appeal, Defendants rely "on an argument ancillary to the double jeopardy issue [,] the absence of statutory authority for a Government appeal from a judgment of acquittal in a criminal case." Motion to Dismiss at 5 n.3. As stated in the text above, however, the Supreme Court has held that 18 U.S.C. § 3731 removes "all statutory barriers to Government appeals and to allow appeals whenever the Constitution would permit." Scott, 437 U.S. at 85. Therefore, Defendant's independent statutory argument is barred by binding Supreme Court precedent.

# A

## 1

We turn first to the question whether there was in effect an acquittal below in this case. As stated above, the district court labeled its decision an "acquittal." I App. Item 54. That label, however, is not determinative: "what constitutes an 'acquittal' is not to be controlled by the form of the judge's action." United States v. Martin Linen Supply Co., 430 U.S. 564, 571 (1977). Instead, "we must determine whether the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged." Id.; see also Scott, 437 U.S. at 97 (stating the same principle); United States v. Appawoo, 553 F.2d 1242, 1244 (10th Cir. 1977) (same).

The district court's ruling satisfies that requirement. "Title 18 U.S.C. § 1708 punishes the theft of mail as well as the possession of stolen mail " United States v. Watson, 423 U.S. 411, 413 n.2 (1976). Proof that an item was stolen from the "mail" is an essential element of any 18 U.S.C. § 1708 violation. United States v. Ashford, 924 F.2d 1416, 1423 (7th Cir. 1991); see also United States v. Roglieri, 700 F.2d 883, 885 (2nd Cir. 1983) ("In order to establish a violation of 18 U.S.C. § 1708, the government must prove that matter was stolen from the mail. . . ."); United States v. Douglas, 668 F.2d 459, 461 (10th Cir. 1982) (similar). Here, the district court made a factual finding in the Defendants' favor on that "essential element," concluding that the government had

not proven that the packages were in the "mail" when the theft at CTC occurred.[3]  We are

persuaded that factual finding bars this appeal.  See, e.g. Martin Linen Supply Co., 430

U.S. at 571 (holding that an acquittal "actually represents a resolution, correct or not, of

some or all of the factual elements of the charged offense"); Scott, 437 U.S. at 97 (same);

United States v. Fay, 553 F.2d 1247, 1249-50 (10th Cir. 1977) ("The trial was terminated

with and by a factual determination . . . after substantial proof.  It was not a bare dismissal

of the charges . . . . Thus, in conformance with the above authorities, we hold that the

appeals here sought by the Government are barred by the double jeopardy clause.").  In

Scott, the Court restated clearly the essence of an acquittal in terms which fit the instant

case and require dismissal of this appeal:

> "Rather, a defendant is acquitted only when 'the ruling of the judge,
> whatever its label, actually represents a resolution [in the defendant's
> favor], correct or not, of some or all of the factual elements of the offense
> charged.'  Martin Linen, supra, at 574."

The government appears to accept the fact that it cannot appeal the district court's

conclusion that CTC was not part of the mail and therefore that the theft from CTC was

not theft from the mail in violation of 18 U.S.C. § 1708.  The government argues, in

effect,  that the district court erroneously held that the indictment did not allege a later

---

[3]The District Judge's Decision, I App. Item 53, stated that the plain language of the indictment indicated that the grand jury concluded the Defendants stole from CTC Distribution, and not at some later time.    Id. at 5.  And the Judge concluded that "the government did not sustain its burden of proving mail theft from the CTC beyond a reasonable  doubt."  Id.

theft from the mail when Defendants received the packages and that the judge's decision was a legal ruling that the indictment did not properly allege the crimes proved at trial and that this legal ruling is appealable. See Appellant's Opening Brief at 8. According to the government, the judge's interpretation of the indictment is a legal conclusion unrelated to factual guilt or innocence, and thus separately appealable.

Contrary to the government's argument, however, when a district court has made a factual finding adverse to the government on an essential element of the offense, legal rulings related to that decision are not separately appealable. See Smalis, 476 U.S. at 144 n.7 ("The status of the trial court's judgment as an acquittal is not affected by the Commonwealth's allegation that the court 'erred in deciding what degree of recklessness was . . . required to be shown under Pennsylvania's definition of [third-degree] murder.' The fact that the acquittal may result from erroneous evidentiary rulings or erroneous interpretations of governing legal principles . . . affects the accuracy of that determination but it does not alter its essential character.") (citation and internal quotation marks omitted) (alteration in original); United States v. DiFrancesco, 449 U.S. 117, 132 (1980) ("It is an acquittal that prevents retrial even if legal error was committed at the trial."); Scott, 437 U.S. at 91 (stating the same principle); United States v. Wood, 958 F.2d 963, 967 (10th Cir.) ("We attach such particular significance to an acquittal that it bars retrial even if based on legal error.") (citation and internal quotation marks omitted), as amended, 1992 WL 58305 (10th Cir. 1992); see also United States v. Lynch, 162 F.3d

732, 735 (2d Cir. 1998) ("Here, the factual element is wilfulness, and the district court explicitly resolved it in favor of [the defendants]. It does not matter that this factual finding was arrived at under the influence of an erroneous view of the law. . . . What is decisive for double jeopardy purposes is that the ruling represents a judgment by the court that the evidence is insufficient to convict. We therefore conclude that we lack jurisdiction to consider this appeal under 18 U.S.C. § 3731 and the Double Jeopardy Clause.") (citation and internal quotation marks omitted); United States v. Kennings, 861 F.2d 381, 384 n.4 (3d Cir. 1988) ("Where the district court, in rendering an acquittal, made factual determinations, even though based on erroneous rulings, courts have generally denied retrial.").

Two other circuits have applied this reasoning to cases involving variances from the indictment. First, in United States v. Hospital Monteflores, Inc., 575 F.2d 332, 333 (1st Cir. 1978), the district court had dismissed the indictment against the defendants because of such a variance. The First Circuit held that:

> It is clear to us that, though labeled a dismissal of the indictment, the court's order was a judgment of acquittal since it actually represented a resolution, correct or not, of the offense charged. The court based its decision on consideration of the evidence, and concluded that whether or not the government's proof might make out some illegality, it did not make out the illegality charged. Jeopardy had attached. Therefore, if the corporation is protected by the Double Jeopardy Clause, it may not be retried.

Id. at 333 n.1 (citation and internal quotation marks omitted) (emphasis added). After determining that the Double Jeopardy Clause protected the corporation, the court

dismissed the appeal. See id. at 335 ("Since we rule that the Constitution would bar further prosecution of the corporate defendant in this case, supra, note 1, this appeal is barred under 18 U.S.C. § 3731.").

The Ninth Circuit reached the same conclusion in United States v. Schwartz, 785 F.2d 673 (9th Cir. 1986). There, the government made the same argument that it makes here:

> For its part, the government readily admits that certain parts of the indictment were specifically dismissed for lack of evidence, thereby amounting to an acquittal as to those parts. The government does not appeal those specific findings. The crux of the government's argument, however, is that despite the label of "acquittal" used by the court, the judgment on Counts One through Twelve was in fact partly "a dismissal" based on the ruling of law that there was an impermissible variance. The government opines, therefore, that it is not barred from appealing or seeking a retrial on the individual parts of the scheme which the district court did not specifically reject for lack of sufficient evidence.

Id. at 677. The Ninth Circuit rejected the government's argument in Schwartz: "Inasmuch as we find the judgment below to be a true acquittal, the Double Jeopardy Clause bars appeal even if the district court based the acquittal on an erroneous interpretation of governing legal principles or upon legal principles which are themselves subsequently overturned." Id. at 678.

This court applied a similar approach in United States v. Genser, 710 F.2d 1426 (10th Cir. 1983). There, the government charged the Defendant with knowingly and intentionally "dispensing" a controlled substance in violation of 21 U.S.C. § 841(a). Id. at 1427. That statute makes it unlawful to both "distribute or dispense" a controlled

substance. Only a "practitioner," however, can "dispense" a controlled substance under the statute:

> After the second Government witness had begun her testimony . . . [the defendant] objected to further testimony absent evidence that he was a practitioner and moved to dismiss. The Government conceded that it could offer no such evidence. . . . [I]t contended that distributing was an included offense of dispensing, and that the trial should proceed on that basis. The Government insisted that the indictment was sufficient under its alternative theory to charge the offense of distribution. The trial court disagreed and dismissed the case.

Id. at 1427 (footnote omitted). After the dismissal, the government obtained a second indictment against the defendant, alleging that he had "distributed" narcotics in violation of 18 U.S.C. 841(a)(1). See id. The defendant argued that the acquittal in the first proceedings barred the new indictment. See id. This court agreed, holding that the factual determination prevented retrial on the same charge.[4] See id. at 1427-31.[5]

---

[4] This court based the decision, in part, on its holding that 21 U.S.C. § 841(a) states only one offense for double jeopardy purposes, whether based on distribution or dispensing. Id. at 1431. Therefore, the acquittal for violating that statute by dispensing a controlled substance barred a later prosecution for distributing that same substance. See id.

Similarly, here, 18 U.S.C. § 1708 states only one offense: theft from the mail. The government could have proven that theft in a number of different ways (for example, the theft could have occurred when the over-labeling took place at CTC, when Defendants received the packages in the mail from the Postal Service, or it could have been a continuing offense involving both activities). However, the district court's acquittal in this case, as in Genser, prevents any later prosecution under 18 U.S.C. § 1708 for the same conduct, even if based on a different theory of theft. Cf. Sanabria v. United States, 437 U.S. 54, 72 (1978) ("The Double Jeopardy Clause is not such a fragile guarantee that its limitations can be avoided by the simple expedient of dividing a single crime into a series of temporal or spatial units.") (citation, alterations, and internal quotation marks omitted). Accordingly, the government's suggestion that the later theft from the Postal Service is wholly separable from

Finally, the Supreme Court reached a similar conclusion in Sanabria v. United States, 437 U.S. 54 (1978).  There, the government charged the defendant with conducting an illegal gambling business in violation of 18 U.S.C. § 1955.  See id. at 56.  The indictment alleged two types of illegal gambling activities: (1) horse betting, and (2) numbers betting in violation of the laws of "the Commonwealth of Massachusetts, to wit, M.G.L.A. Chapter 271, Section 17."  Id. at 57.

After the trial had begun, the district court determined that numbers betting was not prohibited by section 17 of the Massachusetts code, but by section 7.  See id. at 58-59.  Concluding that the indictment failed to cite the proper section, the district court excluded all evidence of numbers betting.  See id. at 59.  The defendant then moved for acquittal, arguing that there was no evidence of horse betting, the other basis for the illegal gambling charge.  See id.  The district court agreed and granted the motion.  See id.  The government appealed.  As in this case, the government "[c]onced[ed] that there could be no review of the District Court's ruling that there was insufficient evidence of petitioner's involvement with horse betting."  See id. at 61.  The government, however, argued that it was entitled to a new trial on the numbers betting charge.  See id.  The Supreme Court disagreed:

the district court's factual finding of innocence is unconvincing.

[5]  We note that Genser involves a retrial rather than an appeal.  The government has provided no logical reason why an "acquittal" should have different meaning in either context.  The Supreme Court has used its retrial and appellate precedent interchangeably on this point.  We therefore hold that an "acquittal" has the same meaning in both contexts.

We must assume that the trial court's interpretation of the indictment was erroneous. But not every erroneous interpretation of an indictment for purposes of deciding what evidence is admissible can be regarded as a "dismissal." Here, the District Court did not find that the court failed to charge a necessary element of the offense; rather it found the indictment's description of the offense too narrow to warrant the admission of certain evidence. To this extent, we believe that the ruling below is properly to be characterized as an erroneous evidentiary ruling, which led to an acquittal for insufficient evidence. That judgment of acquittal, however erroneous, bars further prosecution on any aspect of the count and hence bars appellate review of the trial court's errors.

Id. at 68-69 (citation and footnote omitted).

Similarly here the district court allegedly interpreted the indictment erroneously and hence refused to consider evidence that Defendants stole items from the mail after they over-labeled the packages at CTC. That alleged error is said to have caused the district court to grant an acquittal based on the insufficiency of the evidence. Nevertheless, as in Sanabria, that ruling prevents independent appellate review of the legal error.

Moreover, the Court in Sanabria held that even if the district court's ruling were viewed as a dismissal of the indictment, rather than as an evidentiary ruling, double jeopardy still barred the appeal. See id. at 69. As the Court observed, 18 U.S.C. § 1955 states only one offense: participation in an illegal gambling business. Although the government could prove that offense in more than one way (by demonstrating numbers betting, horse betting, or other unlawful gambling), an acquittal of the offense of participation in an illegal gambling business barred any later prosecution under the statute

for the same conduct, even if based on a different theory:

>It is Congress, and not the prosecution, which establishes and defines offenses
>
>. . . .
>
>The allowable unit of prosecution under § 1955 is defined as participation in a single illegal gambling business . . . .
>. . . .
>
>. . . .Petitioner was found not guilty for a failure of proof on a key factual element of the offense charged: that he was "connected with" the illegal gambling business.  Had the government charged only that the business was engaged in horse betting and had petitioner been acquitted, his acquittal would bar any further prosecution for participating in the same gambling business during the same period of time on a numbers theory.  That the trial court disregarded the Government's allegation of numbers betting does not render its acquittal on the horsebetting theory any less an acquittal on the "offense" charged.  The Double Jeopardy Clause is not such a fragile guarantee that its limitations can be avoided by the simple expedient of dividing a single crime into a series of temporal or spatial units.

Id. at 69-72 (citation, alteration, footnote and internal quotation marks omitted).

Similarly, as stated in note 4, supra, 18 U.S.C. § 1708 states only one offense: theft from the mail.  The government could have proven that theft in a number of different ways (for example, the theft could have occurred when the over-labeling took place at CTC, when Defendants received the packages in the mail from the postal service, or it could have been a continuing offense involving both activities).  However, the district court's "acquittal" in this case, as in Sanabria, prevents any later prosecution under 18 U.S.C. § 1708 for the same conduct, even if based on a different theory of theft.  Accordingly, the district court's allegedly erroneous interpretation of the indictment is not

somehow separable from the district court's factual finding of innocence on the crime as charged in the indictment.

In sum, when a district court has made a factual finding on an essential element of the offense, legal rulings related to that decision are not separately appealable. See Smalis, 476 U.S. at 144 n.7 ("The status of the trial court's judgment as an acquittal is not affected by the Commonwealth's allegation that the court 'erred in deciding what degree of recklessness was . . . required to be shown under Pennsylvania's definition of [third-degree] murder.' The fact that the acquittal may result from erroneous evidentiary rulings or erroneous interpretations of governing legal principles affects the accuracy of that determination but it does not alter its essential character."); DiFrancesco, 449 U.S. at 132 (1980) (same); Scott, 437 U.S. at 96-97 (same).

**2**

The government nevertheless argues that other opinions of the Supreme Court and this court compel a contrary conclusion in this case. We are not persuaded. First, the government relies on Lee v. United States, 432 U.S. 23 (1977). See Appellant's Brief-in-Chief at 8-9. In Lee, the government charged the defendant with theft. See 432 U.S. at 25. The indictment, however, failed to allege knowledge or intent, as required by the statute. See id. After the trial had began, the district court dismissed the indictment as fatally flawed. Id. at 26-27. The defendant conceded, "as he must, that the District Court's termination of the first trial was not an acquittal." Id. at 30 n.8. After the

- 16 -

dismissal, the government re-indicted the defendant, "this time in an indictment alleging all of the elements of the . . . crime." Id. at 27. A jury convicted the defendant, who then appealed arguing that double jeopardy barred the second prosecution. See id. The Supreme Court disagreed, holding that the district court's ruling was factually indistinguishable from a mistrial (which, ordinarily, does not prevent retrial). See id. at 31.

As is apparent, the court in Lee made only a legal determination that the indictment was facially invalid because it failed to allege two elements of the crime. Cf. Sanabria, 437 U.S. at 68 (citing Lee as a case in which the "count failed to charge a necessary element of the offense"). The Court never made any factual finding in the defendant's favor on an essential element of the crime charged. Unlike in Lee, the district court here made such findings.

The government also relies on United States v. Bowline, 593 F.2d 944 (10th Cir. 1979). See Appellant's Brief-in-Chief at 9. There the indictment alleged a single conspiracy. See 593 F.2d at 946. The evidence, however, suggested that there were multiple conspiracies. The district court therefore dismissed the indictment, citing precedents purportedly requiring a dismissal. Id. at 946-47. The government appealed. The defendants argued that double jeopardy barred the appeal. This court disagreed: "In the case at bar the defendants moved for dismissal of Count I of the indictment. This motion did not go to the merits of the case. It was concerned with the validity of the

charge." Id. at 949.

Unlike the reasoning in Lee, Bowline went beyond the face of the indictment and considered factual evidence when dismissing the indictment.  It has been held, however, that "an appeal is not barred simply because a ruling in favor of a defendant is based upon facts outside the face of the indictment. . . .  Rather, a defendant is acquitted only when the ruling of the judge, whatever its label, actually represents a resolution in the defendant's favor, correct or not, of some or all of the factual elements of the offense charged." Scott, 437 U.S. at 96-97 (citation and internal quotation marks omitted).  In Bowline, the district court made no such determination on the factual elements of the offense.  However, here the trial judge made such a determination.  Therefore, Bowline, like Lee, does not control this case.

In sum, we hold that the district court's fact finding, adverse to the government on an essential element of the crime, makes its decision an acquittal and prevents separate appellate consideration of any alleged legal error related to that decision.

**B**

Even though we hold that the district court's decision was a true acquittal, that determination may not mean that double jeopardy bars this appeal.  "Where a Government appeal presents no threat of successive prosecution, the Double Jeopardy Clause is not offended." DiFrancesco, 449 U.S. at 132 (citation and internal quotation marks omitted); see also Wilson, 420 U.S. at 345 ("[A] defendant has no legitimate claim

- 18 -

to benefit from an error of law when that error could be corrected without subjecting him to a second trial before a second trier of fact.").

In a case tried before a jury, it is easier to determine when there is such a threat. For example, if, after the jury returns its verdict, the district court overturns that decision and "acquits" the defendant, then a reversal on remand would not require a retrial. Instead, an appellate court can simply order reinstatement of the original jury verdict. In those circumstances, double jeopardy does not bar an appeal. See United States v. Jenkins, 420 U.S. 358, 365 (1975) ("When this principle is applied to the situation where the jury returns a verdict of guilt but the trial court thereafter enters a judgment of acquittal, an appeal is permitted. In that situation a conclusion by an appellate court that the judgment of acquittal was improper does not require a criminal defendant to submit to a second trial; the error can be corrected on remand by the entry of a judgment on the verdict."), overruled on other grounds by Scott, 437 U.S. at 86-87; Wilson, 420 U.S. at 353 (similar).

In a bench trial, however, such determinations are more complicated as the Court explained in Jenkins:

> A general finding of guilt by a judge may be analogized to a verdict of "guilty" returned by a jury. In a case tried to a jury, the distinction between the jury's verdict of guilty and the court's ruling on questions of law is easily perceived. In a bench trial, both functions are combined in the judge, and a general finding of "not guilty" may rest either on the determination of facts in favor of a defendant or on the resolution of a legal question favorably to him. If the court prepares special findings of fact, either because the Government or the defendant requests them or because

- 19 -

the judge has elected to make them <u>sua</u> <u>sponte</u>, it may be possible upon sifting those findings to determine that the court's finding of "not guilty" is attributable to an erroneous conception of law whereas the court has resolved against the defendant all of the factual issues necessary to support a finding of guilt under the correct legal standard.

<u>Jenkins</u>, 420 U.S. at 366-67 (citations and footnote omitted).

As noted, the district court here found that the government did not prove theft from the mail as required by 18 U.S.C. § 1708. The government, however, relies on three statements by the district court which it argues constitute fact findings in the government's favor if the indictment is interpreted as it suggests:

> "[I]f the specific language of the Indictment had been as the government now urges . . . I would conclude that the government has sustained its burden of proof."

> "Similarly, if one were to decide that the specific language were 'mere surplusage' and accept the Indictment as essentially summarizing the statutory language, I again may well conclude that the defendants are guilty."

> "Accordingly, I conclude that the government's urged interpretation would constitute a constructive amendment because it broadens the possible bases for conviction from that which appeared in the Indictment. <u>United States v. Miller</u>,471 U.S. 130, 138 (1985) . . . As a consequence, 'the offense proved at trial was not fully contained in the Indictment, for trial evidence had 'amended' the Indictment by broadening the possible basis for conviction from that which appeared in the Indictment.' <u>United States v. Miller</u>, 471 U.S. at 138."

I App. Item 53 at 5-6.

The government would have a better argument if the first statement stood alone:

"[I]f the specific language of the Indictment had been as the government now urges . . . <u>I</u>

would conclude that the government has sustained its burden of proof." I App. Item 53 at 5 (emphasis added). However, the Supreme Court has refused to treat similarly strong statements as factual findings:

> Both sides assume that the District Court's statements, made to justify denial of Lee's motion for judgment of acquittal, that he had been "proven [guilty] beyond any reasonable doubt in the world" and that there was "no question about his guilt; none whatsoever," do not amount to a general finding of guilt. We agree that the court's comments, in the context in which they were made, cannot be viewed fairly as a general finding of guilt analogous to a jury verdict.

Lee, 432 U.S. at 28 n.4 (alteration in original).[6]

Therefore there are no factual findings for us to reinstate on appeal were we to reverse the district court on the merits. Instead, we would have to remand for further factfinding proceedings. It does not matter that those proceedings might be relatively minor in this case: "[T]he Double Jeopardy Clause bars a postacquittal appeal by the prosecution not only when it might result in a second trial, but if reversal would translate into further proceedings of some sort, devoted to the resolution of factual issues going to

---

[6]The district court here qualified its statement cited above ("I would conclude" I App. Item 53 at 5) with its next statement that "[s]imilarly, if one were to decide that the specific language were 'mere surplusage' and accept the Indictment as essentially summarizing the statutory language, I again may well conclude that the defendants are guilty." Id. at 5-6 (emphasis added). The wording of this statement indicates that neither the first nor the second statement constitute factual findings that Defendants would be guilty under the government's reading of the indictment; the district court merely suggested that they "may well" be guilty. Cf. United States v. Dyer, 546 F.2d 1313, 1315-16 (7th Cir. 1976) (holding double jeopardy barred an appeal even though the district court stated that, had indictment been worded as the government alleged, "a different result might be warranted").

the elements of the offense charged." Smalis, 476 U.S. at 145-46 (citation and internal quotation marks omitted); see also Jenkins, 420 U.S. at 370 (stating the same proposition). Smalis teaches that

> "whether the trial is to a jury or to the bench, subjecting the defendant to postacquittal factfinding proceedings going to guilt or innocence violates the Double Jeopardy Clause. Arizona v. Rumsey, 467 U. S. 203, 211-12, (1984)."

Smalis, 476 U. S. at 145.The defendant would be forced to "run the gantlet" a second time. Green v. United States, 355 U.S. 184, 190 (1957).

## III

We lack jurisdiction pursuant to 18 U.S.C. § 3731 and, accordingly, must DISMISS this appeal.