[No. B134841. Second Dist., Div. Six. Mar. 28, 2001.]

THE PEOPLE, Plaintiff and Appellant, v.
RICARDO SALGADO, Defendant and Respondent.

**COUNSEL**

Gil Garcetti, District Attorney, Brent Riggs and Shirley S. N. Sun, Deputy District Attorneys, for Plaintiff and Appellant.

Lisa M. Bassis, under appointment by the Court of Appeal, for Defendant and Respondent.

**OPINION**

**PERREN, J.**—In this case, we address issues left undecided in *People v. Hatch* (2000) 22 Cal.4th 260 [92 Cal.Rptr.2d 80, 991 P.2d 165] (*Hatch*). We

hold that a trial court's postconviction dismissal of a jury's verdict based on insufficiency of evidence is an appealable order. We further hold that judgment may be entered on that underlying jury verdict without violating the state or federal prohibition against double jeopardy.

After a jury convicted Ricardo Salgado of carjacking (Pen. Code, § 215)[1] and assault with a firearm (§ 245, subd. (a)(2)), the trial court granted its own motion for new trial of the carjacking count and dismissed that count after finding the evidence legally insufficient to support the verdict. In their appeal, the People raise procedural issues concerning the new trial order and dismissal, and also contend that the trial court erred in finding insufficient evidence to support Salgado's conviction for carjacking. We conclude that although the trial court had the power to dismiss the charge of carjacking, its doing so in this case on a finding that the evidence was insufficient to support the verdict is error. Therefore, we reverse.

## FACTS AND PROCEDURAL HISTORY

Matthew Casillas was driving a black Nissan Maxima in Whittier, California. While Casillas was stopped at a traffic light, someone opened his side door. Casillas got out of the car to investigate and saw a man, later identified as codefendant Giovanni Padilla, standing by the car holding a gun. As Casillas ran away, he saw Padilla get into the car. He also saw three men get into the backseat of the car. The car then drove off. One of the men who had gotten into the backseat wore a hat and had a shaved head on the sides but long hair in the back. Casillas identified Salgado in a photographic lineup as resembling this man because of the "shaved head and the sides." During trial, however, Casillas was unable or unwilling to identify Salgado.

Forty minutes later, the black Nissan Maxima stopped near Margarito Gutierrez, who was standing on a sidewalk in Compton. Shots were fired from the car, and Gutierrez was wounded. About 15 minutes later, the car was spotted by the police and a chase ensued. When the car crashed, codefendant Padilla jumped out from the driver's seat and was subdued by the police. Salgado was apprehended while still in the front passenger seat.

Evidence showed that the shooting was gang related. An expert testified that Padilla was a member of the Tortilla Flats street gang and Salgado was an associate of the gang. The expert also testified that there was hostility between Tortilla Flats and a rival gang, and that Gutierrez had the same ethnicity and dress style as members of the rival gang.

After the jury verdict, the trial court expressed concern over the sufficiency of the evidence against Salgado on the carjacking count and stated

---

[1]All statutory references are to the Penal Code unless otherwise stated.

that it was considering relief under the new trial statute, section 1181, subdivision 6. Following argument, the court granted its own motion for a new trial on that count and, immediately thereafter, dismissed it. A June 25, 1999, minute order stated that "there was not enough evidence to support a conviction by jury; therefore, the court grants a new trial and dismisses [the carjacking count] pursuant to P.C. 1181.6." The People appeal the new trial and dismissal orders. (§ 1238, subd. (a)(3) & (8).)

DISCUSSION

*Dismissal*

The People contend that the new trial order exceeded the authority of the trial court since it was made on the court's motion, not on motion by Salgado. (§ 1181.) The People also contend that granting a new trial and dismissing the carjacking count at the same time were inconsistent rulings.

█ We agree that, ordinarily, a trial court has no authority to grant a new trial on its own motion. (*People v. Rothrock* (1936) 8 Cal.2d 21, 24 [63 P.2d 807]; *People v. Sanders* (1990) 221 Cal.App.3d 350, 363 [271 Cal.Rptr. 534].) But a trial court has authority to dismiss an action or part of an action under section 1385. (*Hatch, supra,* 22 Cal.4th at pp. 268-269; *People v. Orin* (1975) 13 Cal.3d 937, 942 [120 Cal.Rptr. 65, 533 P.2d 193].) The trial court's error in ordering a new trial does not invalidate its contemporaneous dismissal of the carjacking count. The dismissal was a separate and distinct action authorized by section 1385. "The judge or magistrate may, either of his or her own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed." (§ 1385.) Moreover, a section 1385 dismissal may be made after the case has been submitted to the jury. (*Hatch, supra,* at pp. 268-269.)

The June 25, 1999, minute order cites the new trial statute (§ 1181, subd. 6), and the record shows that the trial court believed it was acting under that statute. Nevertheless, the record and minute order establish that all the conditions of a 1385 dismissal were satisfied. The minute order satisfies the requirement that "[t]he reasons for the dismissal must be set forth in an order entered upon the minutes." (§ 1385; *People v. Orin, supra,* 13 Cal.3d at p. 944.) And the record shows that the court, in essence, made the order in furtherance of justice when it said it could not sentence a defendant on the basis of insufficient evidence. Also, the People do not contend that the trial court failed to clearly state its reason for dismissing the carjacking count.

If the dismissal is correct upon any legal theory applicable to the case, it will be upheld on appeal regardless of the court's stated explanation for the

ruling. (*People v. Zapien* (1993) 4 Cal.4th 929, 976 [17 Cal.Rptr.2d 122, 846 P.2d 704].) Also, a defect in the form of the motion should not be construed to undermine the trial court's duty to protect the fundamental rights of the accused. (See *Glasser v. United States* (1942) 315 U.S. 60, 71 [62 S.Ct. 457, 465, 86 L.Ed. 680]; *People v. Fosselman* (1983) 33 Cal.3d 572, 582 [189 Cal.Rptr. 855, 659 P.2d 1144].) Despite its deficient form, the dismissal of the carjacking count was consistent with this constitutional duty.

The record also shows that the dismissal was based on the trial court's conclusion that there was insufficient evidence to support the conviction as a matter of law. This is important to the questions of appealability because double jeopardy principles permit a retrial when a dismissal is based on the trial court's reweighing of the evidence as a "thirteenth juror," but precluded when a dismissal is based on the legal insufficiency of the evidence. (*Tibbs v. Florida* (1982) 457 U.S. 31, 42, 45-46, fn. 22 [102 S.Ct. 2211, 2218, 2220-2221, 72 L.Ed.2d 652]; *Burks v. United States* (1978) 437 U.S. 1, 18 [98 S.Ct. 2141, 2150-2151, 57 L.Ed.2d 1]; *Hatch, supra,* 22 Cal.4th at pp. 271-272.)

■ A section 1385 dismissal will be construed as being based on legally insufficient evidence only if "the record clearly indicates that the trial court applied the substantial evidence standard." (*Hatch, supra,* 22 Cal.4th at p. 273, fn. omitted.) Here, it is clear that the court applied the substantial evidence test since it "viewed the evidence in the light most favorable to the prosecution and concluded that no reasonable trier of fact could [convict]." (*Hatch, supra,* at p. 273; see also *United States v. Martin Linen Supply Co.* (1977) 430 U.S. 564, 571 [97 S.Ct. 1349, 1354-1355, 51 L.Ed.2d 642] (*Martin Linen*).)

The June 25, 1999, minute order states that there was insufficient evidence to support a conviction, and the trial court repeatedly used the phrase "insufficient evidence" during the hearings. (See *People v. Smith* (1983) 33 Cal.3d 596, 599 [189 Cal.Rptr. 862, 659 P.2d 1152] [entire record may be considered in interpreting the minute order]; see also *Mannes v. Gillespie* (9th Cir. 1992) 967 F.2d 1310, 1315-1316 [the phrase "insufficient evidence" is a term of art showing that the court found the evidence to be legally insufficient to support a conviction].) Specifically, Salgado was prosecuted as an aider and abettor, and the trial court stated that "there simply is not legally sufficient evidence to support a conviction for the carjacking against Mr. Salgado. . . . [T]here's really no evidence to show that . . . by act or advice he aided, promoted or encouraged or instigate[d]" the carjacking.

*Appealability*

The People contend that, even if the dismissal was procedurally correct, the trial court erred in finding no substantial evidence to support the verdict. Before we can reach the merits of this contention, we must first determine whether the dismissal order is appealable.

In *Hatch*, the trial court declared a mistrial when the jury was unable to reach a verdict and later dismissed the case pursuant to section 1385. After the People refiled charges, the defendant contended that the second prosecution was barred by double jeopardy principles. The Supreme Court held that a section 1385 dismissal could be made for legally insufficient evidence after a case is submitted to the jury, and that such a dismissal is the functional equivalent of an acquittal. (*Hatch, supra,* 22 Cal.4th at pp. 269, 271-272.) However, it concluded that the dismissal at issue resulted from the reweighing of evidence, not a determination of legal insufficiency. Therefore, the court expressly declined to decide whether a dismissal for insufficiency of the evidence is appealable. (*Id.* at pp. 267-268, 276.)

 We conclude that the dismissal of the carjacking count is appealable under section 1238, subdivision (a)(8) because it occurred after a verdict of guilty by the jury. In addition, the appeal is not precluded by the constitutional prohibition against double jeopardy, for the same reason.

The People's right to appeal is statutory, and appeals that do not fall within the exact statutory language are prohibited. (*People v. Drake* (1977) 19 Cal.3d 749, 754 [139 Cal.Rptr. 720, 566 P.2d 622].) Prior to 1998, section 1238, subdivision (a)(8) did not permit appeals after a defendant had been placed in jeopardy unless there was an express or implied waiver of jeopardy. The People could appeal from an "order or judgment dismissing or otherwise terminating the action *before the defendant has been placed in jeopardy or where the defendant has waived jeopardy.*" (Former § 1238, subd. (a)(8), as amended by Stats. 1988, ch. 527, § 1, p. 1961, *id.,* ch. 528, § 1, p. 1963, italics added.) An appeal of the dismissal of the carjacking count would not have been authorized by this version of the statute since, undisputedly, Salgado did not waive the jeopardy which attached when his trial began. The merits of an appeal "may be reached only if it is determined that jeopardy did not attach." (*People v. Smith, supra,* 33 Cal.3d at p. 601, fn. 3.)

However, prior to Salgado's 1999 trial, section 1238, subdivision (a)(8) was amended to permit the People to appeal from "[a]n order or judgment dismissing or otherwise terminating all or any portion of the action *including such an order or judgment after a verdict or finding of guilty* or an order or

judgment entered before the defendant has been placed in jeopardy or where the defendant has waived jeopardy." (Italics added.) Since it occurred after a guilty verdict, there is now express statutory authority for the People's appeal of the dismissal of the carjacking count.

A review of the legislative history of the 1998 amendment to section 1238, subdivision (a)(8) supports this conclusion. A legislative committee report states that the amendment was enacted to permit the prosecution to appeal in all situations "except where the appeal would violate double jeopardy," thereby bringing the scope of appeals by the People into conformity with federal law. (Assem. Com. on Public Safety, Rep. on Sen. Bill No. 1850 (1997-1998 Reg. Sess.) as amended May 12, 1998.) The committee report cites instances of injustice because section 1385 dismissals could not be appealed after a guilty verdict and states that, without appellate review, legal issues would be decided by trial judges with no procedure to assure uniformity or correctness of trial court decisions. (Assem. Com. on Public Safety, Rep. on Sen. Bill No. 1850 (1997-1998 Reg. Sess.) as amended May 12, 1998.)

## Double Jeopardy

Statutory authorization would not permit an appeal which violated the double jeopardy provision of the state or federal Constitution. If the carjacking count had been dismissed after a jury deadlock as in *Hatch*, the dismissal would have terminated Salgado's prosecution since a retrial would violate the prohibition against double jeopardy. (*Hatch, supra,* 22 Cal.4th at pp. 271-272; *Martin Linen, supra,* 430 U.S. at pp. 569, 574 [97 S.Ct. at pp. 1353-1354, 1356].) But with the jury's guilty verdict in this case, a successful appeal will not require a retrial. Salgado's prosecution can be resolved by entering judgment on the verdict. Far from placing him in jeopardy a second time, a reversal of the dismissal simply restores Salgado to the position in which he found himself after the jury verdict in his only trial.

Both the federal and California Constitutions have double jeopardy clauses. (U.S. Const., 5th Amend.; Cal. Const., art. I, § 15.) Stated succinctly, these clauses provide that a person may not be subjected to a second prosecution for the same offense for which he or she has once been prosecuted and convicted or acquitted. (§§ 687, 1023.)

The primary purpose of the double jeopardy clause is to prevent multiple trials. (*Martin Linen, supra,* 430 U.S. at p. 569 [97 S.Ct. at pp. 1353-1354]; *United States v. Wilson* (1975) 420 U.S. 332, 342 [95 S.Ct. 1013, 1021, 43 L.Ed.2d 232] (*Wilson*); *People v. Fields* (1996) 13 Cal.4th 289, 298 [52

Cal.Rptr.2d 282, 914 P.2d 832].) "[T]he State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." (*Green v. United States* (1957) 355 U.S. 184, 187-188 [78 S.Ct. 221, 223, 2 L.Ed.2d 199, 61 A.L.R.2d 1119].) The purpose of the double jeopardy clause " 'would be negated were we to afford the government the opportunity for the proverbial "second bite at the apple." ' " (*People v. Trevino* (1985) 39 Cal.3d 667, 699 [217 Cal.Rptr. 652, 704 P.2d 719], quoting *Burks v. United States, supra,* 437 U.S. at p. 17 [98 S.Ct. at p. 2150].)

The purpose of the double jeopardy clause, however, is not undermined when the jury reaches a guilty verdict before the trial court acts. Even if it is the functional equivalent of an acquittal, appellate review of a dismissal for legal insufficiency will not result in another trial. Where the jury convicts and the court then "acquits," an error in the court's ruling can be corrected by restoring the jury verdict and entering judgment accordingly.

The distinction between preverdict and postverdict action by the trial court is established in federal case law and recognized in state cases. In *Wilson*, after the jury found the defendant guilty, the trial court dismissed the case for prejudicial prosecution delay between the offense and the indictment. The United States Supreme Court held that the trial court ruling did not violate the federal constitutional prohibition against double jeopardy and could be appealed by the prosecution.[2] The court pointed out that a "defendant has no legitimate claim to benefit from an error of law when that error could be corrected without subjecting him to a second trial before a second trier of fact." (*Wilson, supra,* 420 U.S. at p. 345 [95 S.Ct. at p. 1023], fn. omitted; see also *United States v. DiFrancesco* (1980) 449 U.S. 117, 138-139 [101 S.Ct. 426, 438-439, 66 L.Ed.2d 328] [appeal of sentence not barred by double jeopardy since imposition of longer sentence on remand would not require a new trial].)

In a companion case to *Wilson*, the court indicated that even a not guilty finding after a bench trial might be appealable without violating the principles of double jeopardy. The court stated that such a result could be based

---

[2]The right of the government to appeal in a criminal case is also limited by statute under federal law. However, in 1970 all nonconstitutional barriers to such appeals were removed. Since then, the government may appeal whenever the appeal would not violate the double jeopardy clause of the United States Constitution. (18 U.S.C. § 3731; see *Wilson, supra,* 420 U.S. at p. 337 [95 S.Ct. at pp. 1081-1019].)

on either factual findings or resolution of a legal question favorable to the defendant. The court concluded that there would be no impediment to an appeal of the determination of a legal question where, apart from that determination, the trial court's factual findings necessarily and clearly established the defendant's guilt. (*United States v. Jenkins* (1975) 420 U.S. 358, 366-367 [95 S.Ct. 1006, 1011-1012, 43 L.Ed.2d 250], overruled on other grounds in *United States v. Scott* (1978) 437 U.S. 82, 101 [98 S.Ct. 2187, 2199, 57 L.Ed.2d 65]; see also *U.S. v. Hunt* (10th Cir. 2000) 212 F.3d 539, 549 [stating same principle but factual findings did not establish guilt].)

In *Martin Linen*, the court held that a trial court order made after the jury deadlocked was not appealable, but stated that there would be no double jeopardy problem with an appeal when a guilty verdict could be restored. (*Martin Linen, supra*, 430 U.S. at pp. 569-570 [97 S.Ct. at pp. 1353-1354].) "The absence of a threatened second trial mitigates the possibility of governmental jury shopping and substantially reduces the expense and anxiety to be borne by the defendant. In addition, the government's interest in preserving a conviction fairly attained obviously is far greater than its interest in investing additional time and resources in reprosecuting a defendant following a jury's failure to reach a verdict and a trial court's judgment of acquittal." (*Id.* at p. 570, fn. 7 [97 S.Ct. at p. 13554].)

Even the cases relied on by *Hatch* for the proposition that a trial court's dismissal for legal insufficiency constitutes a functional equivalent of an acquittal for double jeopardy purposes only hold that a retrial is prohibited. (*Hudson v. Louisiana* (1981) 450 U.S. 40, 42-43 [101 S.Ct. 970, 971-972, 67 L.Ed.2d 30]; *Burks v. United States, supra,* 437 U.S. at pp. 5, 11 [98 S.Ct. at pp. 2144, 2147].) Neither *Hudson* nor *Burks* addresses the issue of appeal when a jury guilty verdict had been reached before the court determined that the evidence was legally insufficient to support the verdict.

Furthermore, at least one federal appellate court has reversed a trial court's postverdict entry of judgment in favor of the defendant based on legally insufficient evidence. (*U.S. v. Sharif* (9th Cir. 1987) 817 F.2d 1375.) The court stated that an appeal was permissible because success by the prosecution "would result merely in a reinstatement of the original verdict, not a new trial." (*Id.* at p. 1376.)

Two California cases also apply the distinction. In *In re Richard C.* (1979) 89 Cal.App.3d 477 [152 Cal.Rptr. 787], a juvenile court referee's factual finding of guilt was dismissed by a judge. The appellate court applied the *Wilson* analysis since reversal of the dismissal only required a reinstatement of the referee's order, not a second factual finding. (*Id.* at pp. 485-486.)

Also, in *People v. Cartwright* (1979) 98 Cal.App.3d 369 [159 Cal.Rptr. 543], the People appealed a trial court reduction of a jury verdict from first to second degree murder. (§ 1181, subd. 6.) Citing *Wilson*, the court found no double jeopardy problem because "[d]ouble jeopardy is directed at the threat of multiple prosecutions. Where there is no threat of multiple punishment or successive prosecutions the double jeopardy clause is not offended. [Citations.]" (*Cartwright*, at p. 379.)

### Conviction Is Supported by Substantial Evidence

■ Having resolved the issues of appealability and double jeopardy, we conclude that, as a matter of law, the trial court erred in finding insufficient evidence to convict Salgado. ■ As required, the trial court reviewed the entire record in the light most favorable to the verdict and determined that there was no substantial evidence which would permit any rational jury to find Salgado guilty of carjacking beyond a reasonable doubt. (*Hatch, supra,* 22 Cal.4th at p. 272; see also *Jackson v. Virginia* (1979) 443 U.S. 307, 318-319 [99 S.Ct. 2781, 2788-2789, 61 L.Ed.2d 560]; *People v. Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].) On appeal, we must engage in precisely the same task as the trial court and determine, without reweighing the evidence, whether there was sufficient evidence to permit a rational jury to convict. (*Hatch, supra,* at p. 272; see also *People v. Memro* (1995) 11 Cal.4th 786, 835-836 [47 Cal.Rptr.2d 219, 905 P.2d 1305]; *People v. Orin, supra,* 13 Cal.3d at p. 951 [factual basis for § 1385 dismissal must be supported by substantial evidence].)

■ Based on the evidence and reasonable inferences therefrom, we conclude there was sufficient evidence for a rational jury to find that Salgado aided and abetted the carjacking. The trial court stated that the evidence was sufficient for a jury to conclude Salgado was at the scene of the carjacking and drove away in Casillas's car. But, the court concluded that there was " really no evidence to show that . . . by act or advice [Salgado] aided, promoted or encouraged or instigate[d]" the carjacking. The trial court correctly stated the law but erred in its evaluation of the evidence.

It is uncontested that Salgado is criminally liable only on an aiding and abetting theory and that mere presence at the scene of a crime is insufficient to establish aider and abettor liability. (*People v. Campbell* (1994) 25 Cal.App.4th 402, 409 [30 Cal.Rptr.2d 525].) Aiding and abetting requires a person to promote, encourage or instigate the crime with knowledge of its unlawful purpose. (*People v. Beeman* (1984) 35 Cal.3d 547, 554-561 [199 Cal.Rptr. 60, 674 P.2d 1318]; *People v. Nguyen* (1993) 21 Cal.App.4th 518, 529 [26 Cal.Rptr.2d 323].)

Here, not only was Casillas's identification of Salgado sufficient to establish Salgado's presence at the carjacking, evidence that Salgado drove away in the car raises an inference, when viewed in the context of the events that soon followed, that he promoted and encouraged the carjacking. The jury could reasonably conclude that Salgado contributed to the threat that led Casillas to surrender his car.

In addition, evidence that Salgado was in the car during the drive-by shooting 40 minutes later and still in the car 15 minutes later when it crashed following the police chase, reasonably leads to the conclusion that the carjacking was committed in order to facilitate the shooting. And, evidence that the drive-by shooting was gang related strengthens the inference that both crimes were committed by Salgado and the others for a single purpose.

The order of dismissal is reversed. The matter is remanded to the trial court to sentence Salgado on the carjacking count, resentence on the assault with a firearm count, and enter judgment on the jury verdicts accordingly.

Gilbert, P. J., and Yegan, J., concurred.

A petition for a rehearing was denied April 25, 2001, and respondent's petition for review by the Supreme Court was denied July 25, 2001. Brown, J., did not participate therein.