Filed 3/14/24

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT


| | |
|---|---|
| THE PEOPLE,<br><br>      Petitioner,<br><br>      v.<br><br>THE SUPERIOR COURT OF SANTA CLARA COUNTY;<br><br>      Respondent;<br><br>JOHN KEVIN WOODWARD,<br><br>      Real Party in Interest. | H051311<br>(Santa Clara County<br>Super. Ct. No. C2200594) |


In this petition for extraordinary writ relief, we consider whether constitutional prohibitions against double jeopardy bar the refiling of a murder charge after its dismissal by court order in 1996 following two mistrials.

In 1992, John Kevin Woodward was charged with the murder of Laurie Houts. The case proceeded to trial and twice resulted in deadlocked juries and declarations of mistrial. After the second mistrial in 1996, the trial court dismissed the case pursuant to Penal Code former section 1385.[1] In a written order, the trial court explained the dismissal was "in the furtherance of justice for insufficiency of the evidence."

---

[1] Unspecified statutory references are to the Penal Code.

Advancements in DNA technology led to new evidence against Woodward. In 2022, the Santa Clara County District Attorney (district attorney) refiled the murder charge against him. Woodward moved to dismiss the complaint on double jeopardy grounds. The trial court agreed that the 1996 dismissal of the case for insufficiency of the evidence operated as an acquittal and dismissed the refiled complaint.

Petitioner district attorney brings this petition for writ of mandate. He asks this court to order the trial court to vacate its dismissal order and enter a new order denying real party in interest Woodward's motion to dismiss. The district attorney disputes that the murder charge against Woodward was dismissed due to legal insufficiency of the evidence and contends the trial court erred in construing the 1996 dismissal order as an acquittal.

We agree. Applying the standard articulated in *People v. Hatch* (2000) 22 Cal.4th 260 (*Hatch*), we decide the trial court's section 1385 dismissal order does not clearly indicate an intent to dismiss for legally insufficient evidence and preclude retrial. As double jeopardy principles do not bar the refiling of the case against Woodward, we will issue a peremptory writ directing the trial court to vacate its order dismissing the refiled murder charge.

## I. FACTS AND PROCEDURAL BACKGROUND

### A. *1992–1996 Murder Prosecution*

On September 5, 1992, Laurie Houts was found dead in her car, parked about one mile from her place of work in Mountain View. She had been strangled with a rope while seated in the driver's seat. The rope had been pulled through her mouth like a gag, knotted behind the neck, and left in place. The cause of death was strangulation.

Woodward was identified as a suspect. At the time, he lived with Houts's boyfriend Brent Fulmer. Woodward had reportedly displayed possessive behavior toward Fulmer and became jealous when Houts began spending time with Fulmer. Two latent fingerprints belonging to Woodward were recovered on the outside of Houts's car,

2

and fibers collected from masking tape on the free end of the rope used to strangle Houts showed characteristics similar to the outside of Woodward's sweatpants. Woodward had no alibi for the window of time in which Houts was killed. During a pretext phone call between Woodward and Fulmer, Woodward never denied killing Houts. Based on these and other circumstances and evidence, the district attorney charged Woodward with Houts's murder.

The first jury trial resulted in a hung jury, with the majority (8 to 4) voting for acquittal. The prosecution elected to retry the case, resulting in a second jury deadlock with the majority (7 to 5) again voting for acquittal. The same judicial officer presided over both trials.

### B. 1996 Dismissal of Case

At a posttrial hearing on August 7, 1996, the trial court ordered the murder case dismissed pursuant to former section 1385.[2] The court's dismissal order is reflected in two documents issued on August 7, 1996, a minute order[3] and a written order signed by the judge ("written decision") (collectively the "1996 dismissal order").

The minute order states as follows: "In open court at 9:49 [a.m.] with above-named counsel and defendant present. [¶] The [c]ourt reads the written decision into the record dismissing this case pursuant to Penal Code [s]ection 1385 based on insufficient evidence. The written decision is ordered filed and defendant's bail is ordered exonerated."

---

[2] We refer to former section 1385 when referencing the version of section 1385 in effect in 1996 when the trial court issued its dismissal order. (Former § 1385, as amended (Stats. 1986, ch. 85, § 2, eff. May 6, 1986).)

[3] The term " 'minute order' " generally refers to the written entry of a court's ruling into the minutes. (See *Southwestern Law School v. Benson* (2019) 42 Cal.App.5th Supp. 1, 9.)

The written decision cites the relevant factors for dismissing a case "in furtherance of justice" under former section 1385, subdivision (a) (hereafter former section 1385(a)) and describes the prosecution theories and evidence presented in both jury trials.

Regarding the evidence, it states that "[a] comparison of the first trial and the second trial shows that the prosecution has presented no new evidence pointing to the defendant's guilt and there is no probability that new evidence will become available. Absent new evidence there is no likelihood that a jury would be able to convict the defendant of murder." The decision critiques the quality of the evidence, noting that while over 300 items of evidence and 30 witnesses were presented during each trial, "the prosecution was not able to utilize the evidence to prove" guilt beyond a reasonable doubt because "[t]he substantive quality of the evidence did not lend itself to proving the prosecution's contentions." It explains, "This lack of quality meant that the prosecution was limited to very little evidence with which to try its case. With the possible exception of the fingerprints and the defendant's apparent inconsistent statements, the vast majority of the evidence does not point to the defendant's guilt."

The written decision also addresses the prosecution's theory that Woodward killed Houts out of jealousy, stating there was "insufficient proof that such a jealousy existed." Citing *Tibbs v. Florida* (1982) 457 U.S. 31 (*Tibbs*), it explains that a dismissal would further the interests of justice "by preventing the prosecution from honing its trial strategies and perfecting its presentation of the evidence through successive attempts at conviction." It further cautions, citing *Tibbs*, that "[r]epeated prosecutions would create a risk of conviction through sheer governmental perseverance."

The final two paragraphs of the written decision reiterate the trial court's reasoning for the dismissal order. It states, "The prosecution has not met its burden of proof in two trials and absent new evidence it will be unable to do so in subsequent trials. Another trial would only serve to harass the defendant. It is reasonable to believe that society will not be endangered by this decision and the interest of justice will best be

4

served by a dismissal.  [¶]  A dismissal of this case is not meant to criticize the work done by the prosecution or deprive the victim's family of an opportunity to see their daughter's killer brought to justice.  There is simply a lack of evidence on which to convict [Woodward].  Without new evidence, the result of this case will be the same at each successive trial.  Due to the lack of evidence in this case, a jury will never be able to reach a unanimous verdict of guilty.  It appears that justice would best be served if the charges were dismissed."  The decision orders "that the case be dismissed in the furtherance of justice for insufficiency of the evidence."

### C. 2022 Refiling of Murder Charge

In 2021, the district attorney, Mountain View police detectives, and the Santa Clara County crime lab collaborated in follow up on the investigation into Houts's murder.  According to the declaration of Mountain View Police Department Detective Sergeant David Fisher, whose statement of facts accompanied the refiling of charges against Woodward, new technology applied to evidence in the case supports a finding of Woodward's guilt.  This evidence includes a DNA sample collected from the rope that had been found on Houts and fibers collected from Woodward's sweatpants, as well as the discovery of additional latent fingerprints on the outside of Houts's vehicle.[4]

In 2022, the district attorney refiled a felony complaint in the Santa Clara County Superior Court charging Woodward with one count of murder, in violation of section

---

[4] The evidence referenced in the declaration supporting the refiled complaint includes the use of DNA technology to process a DNA sample collected from the end of the rope that had been used to murder Houts.  A Y-STR analysis of the sample determined that Woodward's DNA profile matched the DNA sample from the rope at all 25 markers, while a second DNA sample from the rope contained a mixture of at least three male individuals and was unsuitable for comparison.  Houts's then-boyfriend Fulmer and another male friend who had carpooled with Houts were both excluded as the sources of the DNA.  The 2021 follow up also identified two additional latent fingerprints matching Woodward on the exterior of Houts's car.  In addition, new technology used by the county crime lab to analyze the fibers from Woodward's sweatpants showed the fibers were indistinguishable from the fibers found on the rope.

187, subdivision (a). The complaint alleged, pursuant to section 1170, subdivision (b), and California Rules of Court, rule 4.421(a)(1), (a)(3), (a)(8), (a)(11), and (b)(1), respectively, that the crime involved great violence, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness; that the victim was particularly vulnerable; that the crime involved planning, sophistication, or professionalism; that Woodward took advantage of a position of trust or confidence to commit the offense; and that Woodward had engaged in violent conduct that indicated a serious danger to society.

### D. Motion to Dismiss

Woodward moved in the trial court to dismiss the charges, arguing that the prosecution violated his state and federal constitutional protections against double jeopardy. Woodward's motion invoked the Fifth and Fourteenth Amendments to the United States Constitution and article I, section 15 of the California Constitution.

Woodward contended that under settled law as articulated by the California Supreme Court in *Hatch*, *supra*, 22 Cal.4th 260, the 1996 dismissal order for insufficiency of the evidence "serves the same function as an acquittal for double jeopardy purposes" and bars retrial. In support of the motion to dismiss, Woodward asked the trial court to take judicial notice of the 1996 dismissal order.

The district attorney opposed the motion to dismiss. The district attorney argued that a dismissal under section 1385 is not an acquittal for double jeopardy purposes under *Hatch* unless the trial court clearly intended to exercise that power and applied the substantial evidence standard, viewing the evidence in the light most favorable to the prosecution, in deciding no reasonable jury could convict. (See *Hatch*, *supra*, 22 Cal.4th at pp. 271, 273.) The district attorney disputed that the 1996 dismissal order offered any clear indication that the trial court had intended the dismissal to serve as an acquittal or applied the substantial evidence standard in deciding to dismiss the charges.

6

The district attorney attached documents in support of its opposition, though it did not request judicial notice of the items. These included Woodward's motion for judgment of acquittal, filed pursuant to section 1118.1 during the second trial, the opposition thereto, and a minute order showing the trial court denied the motion for judgment of acquittal, as well as a copy of an unfiled "motion to dismiss after deadlocked jury" that "presumably" had been filed by Woodward's deputy public defender after the second mistrial (but was not found in the trial court's review of its files). The district attorney argued that the trial court's denial of the acquittal motion, in which the parties had expressly identified substantial evidence as the standard for acquittal based on insufficient evidence, stood in contrast with the court's later decision to dismiss the case pursuant to section 1385. This, according to the district attorney's opposition, illustrated that the trial court "clearly knew what was required for a dismissal for insufficient evidence as a matter of law" but elected instead to apply the standard for dismissal in furtherance of justice.

The opposition also attached a declaration of the prosecuting attorney for both trials that expressed his recollection of the trial judge's statements at the dismissal hearing regarding refiling of the case; a contemporaneous newspaper article from the San Jose Mercury News, dated August 22, 1996, covering the dismissal of charges and statements by the prosecutor and defense counsel regarding the likelihood of refiling charges; and an excerpt of Woodward's motion to set bail in response to the refiled charges. The district attorney argued that these materials further demonstrated that the 1996 dismissal order was not intended to preclude a later refiling of the case in the event the district attorney obtained additional evidence against Woodward.

In reply, Woodward countered that under former section 1385, only the minute order (and not the concurrently filed written decision) should be used to determine the effect of the dismissal. Woodward argued that the district attorney's proffer of other extrinsic evidence, such as the prosecutor's declaration and the newspaper article, was

7

improper. Woodward argued the trial court should not consider the evidence and should order it stricken. Woodward maintained that the district attorney's argument failed to recognize the 1996 dismissal order's citation (in the written decision) to the United States Supreme Court's decision in *Tibbs*, which explains why a dismissal for insufficient evidence bars a retrial. Both parties submitted additional briefing.

At the hearing on the motion to dismiss, the trial court indicated it had carefully considered all the briefing and had made several attempts to find "any and all portions of" the original court file. It explained that "[a]fter a very thorough and diligent search" the court was unable to find any other portions of the trial court record.

On August 22, 2023, the trial court issued a written order granting Woodward's motion to dismiss. It granted Woodward's request for judicial notice of the 1996 dismissal order but rejected the argument that it should consider only the minute order and not the written decision. The court declined to consider the unfiled, unsigned copy of the "motion to dismiss after deadlocked jury" that arguably prompted the 1996 dismissal order, since there was no file stamp or any indication that the motion had been filed, and similarly declined to consider the declaration of the prosecutor, the newspaper article regarding the 1996 dismissal, and the bail motion. The court reasoned that the section 1118.1 acquittal motion and opposition were of minimal relevance, insofar as they served to contrast the discussion of substantial evidence with the absence of any reference to that standard in the unfiled motion to dismiss but noted it would consider the acquittal motion and opposition "to contrast their content with the standards articulated" in the written decision.

On the merits, the trial court evaluated the 1996 dismissal order under *Hatch*. It found that while the 1996 dismissal order did not expressly apply the substantial evidence standard, "the minute order clearly evidenced an intent to dismiss based on the insufficiency of the evidence." The court emphasized that the written decision cites *Mannes v. Gillespie* (9th Cir. 1992) 967 F.2d 1310 (*Mannes*), in which the Ninth Circuit

8

Court of Appeals held that " ' "[i]nsufficient evidence" ' " is a term of art, the use of which courts have found to mean—absent contrary indication—insufficient as a matter of law. (*Id*. at p. 1315.) While noting the written decision does not cite *Mannes* for that proposition, the court found the citation to *Mannes* suggests the trial court was aware of that use of the term " 'insufficient evidence.' " The court further reasoned that insofar as former section 1385 required the reasons for the dismissal to appear in the minute order, it was "telling" that the minute order listed only insufficiency of the evidence. The court rejected the district attorney's position that the dismissal was "in furtherance of justice" based on the written decision's invocation of those factors, since "all dismissals under section 1385 were required to be in the interest of justice."

### E.  *Writ Proceedings in this Court*

Shortly after the trial court issued its dismissal order, the district attorney filed in this court a petition for writ of mandate and request for stay of order of dismissal (petition). The district attorney requested that this court stay the trial court's dismissal order and "[i]ssue an alternative writ of mandate, and thereafter a peremptory writ, commanding respondent court to vacate its order dismissing the complaint, and enter a new order denying [r]eal [p]arty's motion to dismiss; [or] [¶] . . . [¶] [] any other appropriate relief."

This court issued a stay of the trial court's order and requested that Woodward (as real party in interest) file a preliminary opposition to the petition. After Woodward filed his preliminary opposition, the district attorney filed a notice of appeal seeking appellate review of the same dismissal order at issue in this writ proceeding. The appeal is pending in this court (No. H051416) and currently awaits briefing.

This court subsequently issued an order to show cause why a peremptory writ should not issue, as requested by the district attorney. In his return, Woodward contends there is no basis for granting writ relief because the 1996 dismissal order for " 'insufficient evidence' " indicates the trial court deemed the evidence insufficient as a

9

matter of law, barring retrial. Woodward also challenges the petition on procedural grounds, arguing in his demurrer that the petition fails to allege specific facts showing entitlement to relief, including because the district attorney has not alleged the absence of a plain, speedy, and adequate remedy justifying writ review.

We analyze those objections below before turning to the merits of the petition.

## II. DISCUSSION

### A. *Propriety of Writ Relief and Demurrer*

Woodward disputes the propriety of writ review in this case. He demurs to the petition on the ground that it fails to state a claim showing entitlement to relief by not explicitly alleging any error in the trial court's August 22, 2023 dismissal of the charges. He also contends that the petition fails to allege the lack of a plain, speedy, and adequate remedy at law.

We overrule the demurrer as to both grounds.

A proceeding in mandamus is generally subject to the rules of pleading governing civil actions. (*Chapman v. Superior Court* (2005) 130 Cal.App.4th 261, 271 (*Chapman*), citing *Gong v. City of Fremont* (1967) 250 Cal.App.2d 568, 573; Code Civ. Proc., § 1109.) A petition that fails to allege specific facts showing entitlement to relief may be subject to general demurrer. (*Chapman*, at p. 271.) We independently determine whether the petition states a cause of action as a matter of law. (*Jones v. Omnitrans* (2004) 125 Cal.App.4th 273, 277 (*Jones*).) In so doing, "[w]e give the petition a reasonable interpretation, reading it as a whole and viewing its parts in context. We deem to be true all material facts that were properly pled, as well as all facts that may be inferred from those expressly alleged. [Citation.] We also accept as true all recitals of evidentiary facts contained in exhibits attached to the petition. [Citation.] We interpret the petition's allegations liberally, with a view toward substantial justice between the parties." (*Id*. at pp. 277–278.)

10

To be entitled to relief, the petitioner must show that the respondent has a clear, present, and ministerial duty, and that the petitioner has a correlative right to performance of that duty entitling him to a writ of mandate. (*Kavanaugh v. West Sonoma County Union High School Dist.* (2003) 29 Cal.4th 911, 916; accord *People v. Picklesimer* (2010) 48 Cal.4th 330, 340; *In re Dohner* (2022) 79 Cal.App.5th 590, 597.) The petitioner also must demonstrate "no 'plain, speedy, and adequate' alternative remedy exists (Code Civ. Proc., § 1086)." (*Picklesimer*, at p. 340.)

The district attorney's verified petition meets these criteria. While the petition does not explicitly aver that the respondent trial court erred, it alleges that the prosecution opposed dismissal of the murder charge and attaches exhibits demonstrating the district attorney's opposition to dismissal of the charges against Woodward.

Giving the petition a reasonable interpretation, it is apparent that the district attorney is challenging the respondent court's dismissal order as an erroneous application of the law. The allegations imply a duty that the trial court is obligated to perform in a prescribed manner required by law when a given state of facts exists. (*Jones*, *supra*, 125 Cal.App.4th at p. 278.) We decline to sustain the demurrer for failure to state a claim. (See *Chapman*, *supra*, 130 Cal.App.4th at p. 272.)

We further conclude that writ review is proper under the circumstances presented. Typically, mandamus relief will not issue if there is "a plain, speedy, and adequate remedy" at law. (Code Civ. Proc., § 1086.) Thus, "a judgment that is immediately appealable is not subject to review by mandate or other extraordinary writ." (*Powers v. City of Richmond* (1995) 10 Cal.4th 85, 112.) However, an exception may arise "when the remedy by appeal would be inadequate or the issues presented are of great public importance and must be resolved promptly. [Citations.] A remedy by immediate direct appeal is presumed to be adequate, and a party seeking review by extraordinary writ bears the burden of demonstrating that appeal would not be an adequate remedy under the particular circumstances of that case." (*Id*. at p. 113.)

11

"When the petitioner may immediately appeal, his remedy is considered adequate and writ relief is precluded, unless the petitioner 'can show some special reason why it is rendered inadequate by the particular circumstances of his case.' " (*Baeza v. Superior Court* (2011) 201 Cal.App.4th 1214, 1221 (*Baeza*).) "The adequacy of an appellate remedy depends on the circumstances of the case, vesting a large measure of discretion in the appellate court to grant or deny a writ." (*City of Oakland v. Superior Court* (1996) 45 Cal.App.4th 740, 750.)

The district attorney acknowledges that he has a right to appeal the dismissal order (§ 1238, subd. (a)(8)) and has, in fact, noticed an appeal after filing the writ petition. Nevertheless, the district attorney argues the right to an appeal does not preclude writ relief because the circumstances here warrant expedited review of the trial court's ruling.

We agree that the factors asserted in the petition establish the inadequacy of the remedy in the direct appeal. Specifically, the district attorney asserts there is a need to ensure that Woodward remains subject to the court's jurisdiction pending appellate review of the dismissal order. Without such a retention of jurisdiction, Woodward might be able to return to his primary place of residence outside the United States, risking a potential delay of several years in extradition efforts to retrieve him if review were to proceed successfully by direct appeal.[5]

In addition to maintaining jurisdiction over Woodward, other considerations render the right of appeal inadequate. These include the age of the case and the risk of

_____

[5] The petition includes exhibits related to this issue and to the district attorney's initial request to the trial court to stay its dismissal order until the writ petition was filed. The declaration of Mountain View Police Department sergeant and primary investigator for the case explains that Woodward's primary residence and business are in the Netherlands. Woodward was arrested "opportunistically" (not based on a voluntary surrender) on the current charge during a vacation to New York in 2022 and is currently residing out of custody on house arrest with a GPS monitor and living in a family home in Modesto. According to the investigator, a dismissal and discharge from the court's jurisdiction will enable Woodward to return to his home and work in the Netherlands, where any future extradition process would likely take several years.

loss of evidence (including aging witnesses) for both parties, the public's interest and victim's family's interest in the right to a speedy trial (Cal. Const., art. I, §§ 28, subds. (b)(9), (e), 29 [providing the victim's immediate family and the People the constitutional right to a speedy trial]), and the interest in minimizing the duration of pretrial restraints on Woodward. Woodward's state and federal constitutional speedy trial rights (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15, cl. 1) attached in this case as of the time of the 2022 refiling of the murder charge. (*People v. Nelson* (2008) 43 Cal.4th 1242, 1250.) Given the seriousness of the charge and date of the crime more than 30 years ago, further delaying adjudication of the dismissal for double jeopardy only aggravates the potential hardship for all parties awaiting resolution, including Woodward. (See *U.S. v. Marion* (1971) 404 U.S. 307, 320 (*Marion*).)

Woodward counters that the remedy of an appeal is not inadequate merely because it might take longer than pursuing relief by extraordinary writ. (*Duke v. Superior Court* (2017) 18 Cal.App.5th 490, 498.) Citing *People v. Superior Court* (*Kaulick*) (2013) 215 Cal.App.4th 1279, he also questions the district attorney's assertion that maintaining jurisdiction is provided by writ review and a stay, but not by appeal. However, *Kaulick* does not assist Woodward. In that case, the appellate court determined that an appeal would *not* provide a speedy and adequate remedy where the defendant "was scheduled for imminent release" from prison. (*Id*. at p. 1296.) The court reasoned that even if it stayed the matter while an appeal was pending, the matter required speedy resolution, including because any delay in resolving an appeal would leave the defendant unnecessarily incarcerated, contrary to his own interest as well as to the interest of the "public fisc." (*Ibid*., fn. 16.)

Similarly in this case, even assuming a mechanism to retain court jurisdiction over Woodward pending appeal, the age of the case, risk of evidence becoming lost or growing more stale, interest of the victim's immediate family as well as the people of California in obtaining a speedy trial and resolution, and interest in not prolonging

13

Woodward's pretrial restraint and home monitoring, together confirm that a direct appeal in the ordinary course of law would be neither speedy nor adequate. (See U.S. Const., 6th Amend.; Cal. Const., art. I, §§ 15, cl. 1, 28, subds. (b)(9), (e), 29; *Marion*, *supra*, 404 U.S. at p. 320.) We conclude that under the unusual circumstances of this case, the prospect of a direct and immediate appeal of the dismissal order is inadequate to serve the interests of the parties and the public. (*Baeza*, *supra*, 201 Cal.App.4th at p. 1221.) We overrule the demurrer and turn to the merits of the petition.

### B. Standard of Review

Where the question presented is one of law on undisputed facts, we exercise de novo review and are not bound by the findings of the trial court. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799.) Deference to trial court findings of fact does not extend to rulings on questions of law. (*People v. Aldridge* (1984) 35 Cal.3d 473, 477.) Just as courts determine the meaning and effect of a judgment "according to the rules governing the interpretation of writings generally" (*Rancho Pauma Mutual Water Co. v. Yuima Municipal Water Dist.* (2015) 239 Cal.App.4th 109, 115), we apply the same principles to our review of the 1996 dismissal order. Because the underlying facts are undisputed, our review of the trial court's ruling on the operation of the 1996 dismissal order is de novo.

### C. Principles Governing Double Jeopardy After a Section 1385 Dismissal

The constitutional principle of double jeopardy prohibits a defendant from being "twice put in jeopardy" for the same offense. (U.S. Const., 5th & 14th Amends.; see also Cal. Const., art. I, § 15.) It " 'serves principally as a restraint on courts and prosecutors.' " (*People v. Fields* (1996) 13 Cal.4th 289, 298.) Under both the federal and state Constitutions, the double jeopardy clause protects against a second prosecution for the same offense after acquittal. (*United States v. Wilson* (1975) 420 U.S. 332, 342–343; *Hatch*, *supra*, 22 Cal.4th at p. 271.) In applying double jeopardy protections, California courts take guidance from "those decisions interpreting the double jeopardy clauses of both the United States and California Constitutions." (*Hatch*, at p. 271.)

14

Under both federal and California law, the double jeopardy clause precludes retrial if a court determines the evidence at trial was insufficient to support a conviction as a matter of law. (*Hatch*, *supra*, 22 Cal.4th at p. 271, citing *Burks v. United States* (1978) 437 U.S. 1, 18; *People v. Pierce* (1979) 24 Cal.3d 199, 210.) A determination of legal insufficiency of the evidence—whether made at the trial or appellate level—serves as a constitutional bar to retrial for that offense. (*Hatch*, at p. 272; see *Hudson v. Louisiana* (1981) 450 U.S. 40, 42–43.)

On the other hand, "[w]here a court merely 'disagrees with a jury's resolution of conflicting evidence and concludes that a guilty verdict is against the weight of the evidence,' [] a reversal or dismissal on that ground does not bar retrial." (*Hatch*, *supra*, 22 Cal.4th at p. 272, quoting *Tibbs*, *supra*, 457 U.S. at p. 42.) The same exception applies under California's double jeopardy clause. "[T]he reversal of a conviction based on a reweighing of evidence does *not* bar retrial under the California Constitution." (*Hatch*, at p. 272.)

A reversal based on legal insufficiency of the evidence has the same double jeopardy effect as an acquittal "because it means that no rational factfinder could have voted to convict the defendant." (*Tibbs*, *supra*, 457 U.S. at p. 41.) By contrast, a determination based on the weight of the evidence "does not mean that acquittal was the only proper verdict." (*Id*. at p. 42.) Instead, the court "sits as a 'thirteenth juror' and disagrees with the jury's resolution of the conflicting testimony." (*Ibid*.) As in the case of a deadlocked jury, a court's disagreement about the weight of the evidence "does not result in an acquittal barring retrial under the Double Jeopardy Clause." (*Ibid*.)

The trial court dismissed Woodward's case pursuant to section 1385. Since its codification in 1872, section 1385 has authorized California courts to dismiss actions in furtherance of justice. (§ 1385(a); *People v. Bonnetta* (2009) 46 Cal.4th 143, 149.)

The trial court's authority under section 1385 is "broad" but not "absolute." (*People v. Orin* (1975) 13 Cal.3d 937, 945 (*Orin*).) It is "limited by the amorphous

15

concept which requires that the dismissal be 'in furtherance of justice.'  As the Legislature has provided no statutory definition of this expression, appellate courts have been faced with the task of establishing the boundaries of the judicial power conferred by the statute as cases have arisen challenging its exercise.  . . .  [¶]  From the case law, several general principles emerge.  Paramount among them is the rule 'that the language of that section, "furtherance of justice," requires consideration both of the constitutional rights of the defendant, and the interests of society represented by the People, in determining whether there should be a dismissal.' "  (*Id.* at p. 945, italics omitted.)

As our Supreme Court has observed, "section 1385 dismissals often are not based on the insufficiency of the evidence as a matter of law."  (*Hatch*, *supra*, 22 Cal.4th at p. 273.)[6]  Nevertheless, trial courts *may* acquit pursuant to section 1385 for legal insufficiency of the evidence.  (*Ibid*.)  Because dismissals under section 1385 are "often [] not based" on insufficiency of the evidence, but sometimes are, courts reviewing such dismissals for double jeopardy purposes much determine whether to construe the dismissal as an acquittal.  (*Ibid*.)

The leading case in California for determining when the exercise of the broad dismissal authority under section 1385 triggers application of the double jeopardy bar is *Hatch, supra*, 22 Cal.4th 260.  *Hatch* explained that because section 1385 dismissals are often based on factors other than insufficiency of the evidence, they "should not be construed as an acquittal for legal insufficiency unless the record clearly indicates the trial court applied the substantial evidence standard.  Specifically, the record must show that the court viewed the evidence in the light most favorable to the prosecution and concluded that no reasonable trier of fact could find guilt beyond a reasonable doubt."

---

[6] This feature distinguishes a dismissal pursuant to section 1385 from the Georgia statutory scheme examined by the United States Supreme Court in *McElrath v. Georgia* (2024) 601 U.S. ___ [144 S.Ct. 651]), which constituted a "verdict of acquittal under state law" and therefore engaged the double jeopardy bar.  (*Id*. at p. 659.)

16

(*Id.* at p. 273, fn. omitted.) The court further reasoned that "[a]bsent such a showing, we will assume the court did *not* intend to dismiss for legal insufficiency and foreclose reprosecution." (*Ibid.*)

Under *Hatch*, the distinction between a decision based on legal insufficiency of the evidence and one based on a reweighing of the evidence (or other factors applicable to a section 1385 dismissal), lies in the application of the substantial evidence standard. A court "must apply the substantial evidence standard when making" a determination of legal insufficiency. (*Hatch*, *supra*, 22 Cal.4th at p. 272.) Under this standard, courts "must review 'the whole record in the light most favorable to the judgment' and decide 'whether it discloses substantial evidence . . . such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " (*Ibid.*) " '[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (*Ibid.*)

At the same time, the court in *Hatch* cautioned that it did "not intend to impose rigid limitations on the language trial courts may use to dismiss for legal insufficiency of the evidence pursuant to section 1385." (*Hatch*, *supra*, 22 Cal.4th at p. 273.) Instead, it offered the following guidance: "[C]ourts need not restate the substantial evidence standard or use certain 'magic words' whenever they determine that the evidence is insufficient as a matter of law" but should "make their rulings clear enough for reviewing courts to confidently conclude they viewed the evidence in the light most favorable to the prosecution and found that no reasonable trier of fact could convict." (*Ibid.*)

The court in *Hatch* explained that by construing a section 1385 dismissal as an acquittal for legal insufficiency *only* when the record clearly indicates the trial court applied the substantial evidence standard, the reviewing court "properly balances the competing interests embodied in the constitutional prohibitions against double jeopardy." (*Hatch*, *supra*, 22 Cal.4th at p. 273.) This balance, on the one hand, seeks to ensure

17

against "repeated prosecutions [which] unfairly burden a defendant and increase the risk of conviction through sheer perseverance" (*ibid*.), while on the other hand acknowledging "the 'important public interest in finally determining whether [a defendant] committed' an offense." (*Id*. at p. 274.) The court concluded that "barring retrial only when a trial court clearly makes a finding of legal insufficiency" enables courts to abide by these governing principles. (*Ibid*.)

Applying its rule to the facts of the case, the court in *Hatch* concluded retrial was permitted because the record did "not clearly show an intent by the trial court to dismiss for legal insufficiency of the evidence." (*Hatch*, *supra*, 22 Cal.4th at p. 274.) Among the factors the high court considered, it noted the trial court's minute order "merely states that 'no reasonable jury would convict . . . based on the evidence presented in court.' " (*Ibid*.) It observed that the language of the minute order did not indicate the court had viewed the evidence in the light most favorable to the prosecution, especially given that its "use of the word 'would' rather than 'could' suggests a reweighing of evidence rather than an application of the substantial evidence standard." (*Ibid*.) The court stated it was "impossible" considering these "ambiguities" to conclude the trial court intended to dismiss for lack of sufficient evidence as a matter of law. (*Ibid*.)

The *Hatch* court found further support for its interpretation of the minute order in the reporter's transcript, which gave no indication that the trial court had viewed the evidence in the light most favorable to the prosecution. (*Hatch*, *supra*, 22 Cal.4th at p. 274.) Instead, it viewed the court's inquiries about additional evidence, its remarks on the quality of the trial presentations and the apparent pro-prosecution bent of the jury (*id*. at pp. 274–275), and its comments on the improbability of a unanimous verdict of guilt, as "an assessment of the strength of the evidence." (*Id*. at p. 275.) The court in *Hatch* thus declined to construe the section 1385 dismissal as an acquittal for double jeopardy purposes. (*Ibid*.)

18

## D. The 1996 Dismissal Order Does Not Bar Retrial of the Murder Charge

Applying the rule of *Hatch* to the 1996 dismissal order, we conclude the record does not clearly indicate that the trial court applied the substantial evidence standard, viewing the evidence in the light most favorable to the prosecution, in dismissing the case. We recognize the consequences of this determination are significant. Nevertheless, we believe construing the 1996 dismissal order as an acquittal would be inconsistent with *Hatch*. That decision provides that, unless the record *clearly indicates* the court applied the substantial evidence standard in deciding the evidence was legally insufficient to prove guilt beyond a reasonable doubt, "we will assume the court did *not* intend to dismiss for legal insufficiency and foreclose reprosecution." (*Hatch*, *supra*, 22 Cal.4th at p. 273.)

Woodward contends that the respondent trial court correctly concluded the minute order was clear and unambiguous in stating that the reason for the 1996 dismissal was insufficiency of the evidence. He argues that the minute order's use of the term insufficient evidence is significant because, at the time the court issued the 1996 dismissal order, former section 1385 required the reasons for dismissal to be set forth in the minute order.[7]

Woodward points out that the trial court both quoted the statute in its written decision and cited extensively to *People v. Andrade* (1978) 86 Cal.App.3d 963 (*Andrade*), which devotes an entire section of the opinion to the requirement that the reasons for a section 1385 dismissal must be set forth in the minutes. (*Id*. at p. 975.) Because the trial court knew the law and included only one reason for dismissal in the minute order—that of insufficient evidence—Woodward asserts the use of the term

---

[7] The current language of section 1385 requires "[t]he reasons for the dismissal [to] be stated orally on the record." (§ 1385(a).) However, former section 1385 in effect at the time of the 1996 dismissal order, as well as when the Supreme Court decided *Hatch*, required "[t]he reasons for the dismissal [to] be set forth in an order entered upon the minutes." (Former § 1385(a); see *Hatch*, *supra*, 22 Cal.4th at p. 274.)

"insufficient evidence" controls. Even if the minute order is construed as a shorthand reference to the reasons for dismissal stated in the written decision, Woodward points out that the written decision similarly cites " 'insufficiency of the evidence' " as the basis for the dismissal. Furthermore, because the written decision also cites the Ninth Circuit's decision in *Mannes*, in which the Ninth Circuit Court of Appeals construed "insufficient evidence" as a term of art meaning insufficient as a matter of law, Woodward argues the trial court used the term with that same intended meaning, barring retrial.

The district attorney counters that Woodward places improper weight and significance on the minute order over that of the written decision. He argues that despite both sides' agreement that *Hatch* does not require that a court use specific language to engage the bar on retrial, Woodward attempts to place just such significance on the trial court's use of the term "insufficient evidence." The district attorney contends that because there is no clear indication in the 1996 dismissal order that the trial court viewed the evidence in the light most favorable to the prosecution and found the evidence *legally* insufficient, the 1996 dismissal order is ambiguous and may not be construed as an acquittal.

We agree with the district attorney that the 1996 dismissal order may not be construed solely based on the minute order or on a presumed understanding of the trial court's intended meaning for its use of the term "insufficient evidence." Instead, in construing the 1996 dismissal order, we will review the entire available record of the court's decision, including the minute order and written decision, considering the language of former section 1385, contemporaneous case authority on dismissals "in furtherance of justice," and the Supreme Court's guidance in *Hatch*.

Former section 1385 frames the 1996 dismissal order. The minute order states that the dismissal is "pursuant to Penal Code [s]ection 1385," and the written decision quotes subdivision (a) of former section 1385 and discusses the statutory requirements for a section 1385 dismissal according to contemporaneous case authority. Former section

20

1385 states, "The judge or magistrate may, either of his or her own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed. The reasons for the dismissal must be set forth in an order entered upon the minutes."

The trial court undoubtedly understood the requirement that it set forth the reasons for dismissal in the minute order. In *Orin*, *supra*,13 Cal.3d 937, the California Supreme Court reiterated it was "settled law" that the requirement under former section 1385(a) to set forth the reasons for dismissal in the minute order was "mandatory and not merely directory," (*Orin*, at p. 944) and that the failure to do so was enough to invalidate the dismissal. (*Id*. at p. 945.) The high court explained the purpose of the mandatory requirement was to insure against " 'improper or corrupt' " dismissals and "to impose a purposeful restraint upon the exercise of judicial power." (*Id*. at p. 944.) The court in *Orin* thus rejected the trial court's purported exercise of authority under former section 1385, where the trial court had "merely check[ed] a box" on a printed form and neither specified any reasons to justify its dismissal of the charges nor provided any statement "which by clear incorporation or reference" could be deemed to be the reasons set forth in a minute order. (*Ibid*.)

Here, the trial court not only specified in the minute order that it had "read[] the written decision into the record" but also expressly directed the concurrent filing of the written decision. The minute order couched the reason stated for dismissal in terms of its reading the written decision into the record: "The [c]ourt reads the written decision into the record dismissing this case pursuant to Penal Code [s]ection 1385 based on insufficient evidence." This language suggests an intent to include in the minute order, or incorporate by reference, the more detailed written decision. (See *Orin*, *supra*, 13 Cal.3d at p. 944.)

A contrary interpretation of the record would artificially limit this court's understanding of the basis for the 1996 dismissal order to the sparse statement in the

21

minute order, contrary to the language of the minute order itself. Such a restrictive approach would be inconsistent with the California Supreme Court's analysis in *Hatch*, which considered the reporter's transcript in relation to the minute order under review and found the transcript bolstered its conclusion. (*Hatch*, *supra*, 22 Cal.4th at pp. 274–275; see also *People v. Salgado* (2001) 88 Cal.App.4th 5, 10 (*Salgado*) [citing trial court's minute order based on insufficient evidence as well as its repeated reference to "insufficient evidence" during the hearings]; *Andrade*, *supra*, 86 Cal.App.3d at p. 975 [noting "[m]inutes have been interpreted to include a filed and signed written memorandum opinion intended to be and in fact filed as part of the court minutes"].)

As in *Hatch*, the written decision in this case is not inconsistent with the minute order and does not require an attempt to reconcile the minutes with contradictory statements elsewhere in the record. (Cf. *People v. Smith* (1983) 33 Cal.3d 596, 599 [rejecting a mechanical rule and seeking to harmonize, if possible, discrepancies between the minute order and reporter's transcript].) It is therefore appropriate to consider both the language of the minute order and the concurrently filed written decision in construing the 1996 dismissal order.[8]

Together, the minute order and written decision reflect the trial court's analysis of the factors relevant to a section 1385 dismissal and its determination that a dismissal of the case against Woodward would be " 'in the furtherance of justice for insufficiency of

_____

[8] We decline to consider the other documents submitted by the district attorney in support of its opposition to Woodward's motion to dismiss the refiled charge on double jeopardy grounds. These include the unfiled copy of the defense "motion to dismiss after deadlocked jury," the declaration of the prosecutor regarding his recollections of the trial court's statements to counsel at the dismissal hearing, and the news article referring to statements of the prosecutor and defense counsel after the 1996 dismissal. We agree with Woodward that the district attorney has forfeited any argument that this evidence should be considered by having failed to allege error in its writ petition based on the trial court's ruling that it would not consider these documents. We likewise decline to consider Woodward's motion to set bail in response to the refiling of charges as irrelevant to the interpretation of the prior dismissal.

the evidence.' " The parties dispute the extent to which these aspects of the trial court's decision define the nature of its dismissal order by rendering it an acquittal based on legal insufficiency of the evidence or a dismissal in the furtherance of justice.

However, these options are not mutually exclusive. As the California Supreme Court explained in *Hatch*, "trial courts historically have had the power to acquit for legal insufficiency of the evidence pursuant to section 1385." (*Hatch*, *supra*, 22 Cal.4th at p. 268.) The power to acquit for legal insufficiency of the evidence does not depend on the stage of the case (i.e., before submission to the jury under § 1118.1, or after submission to the jury under § 1385) or on the " 'the form of the judge's action.' " (*Id.* at p. 270.) Rather, it depends on " 'whether the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged.' " (*Ibid.*, quoting *United States v. Martin Linen Supply Co.* (1977) 430 U.S. 564, 571.) Thus, neither the trial court's identification of insufficient evidence as the reason for the 1996 dismissal order, nor the court's analysis of various "interest of justice" factors relevant to a section 1385 dismissal, is determinative unless the record demonstrates the court intended to exercise its power to acquit. *Hatch* is unambiguous on this point: while the trial court has the power to dismiss for insufficient evidence as a matter of law pursuant to section 1385, the reviewing court "will not construe its dismissal as an acquittal for double jeopardy purposes absent clear evidence the court intended to exercise this power." (*Hatch*, *supra*, 22 Cal.4th at p. 271.)

Woodward contends the dismissal meets the standard for acquittal under *Hatch* because the minute order and written decision expressly cite "insufficiency of the evidence" as the basis for the dismissal. He argues that because all dismissals under section 1385 must be in furtherance of justice, the trial court's discussion of factors relevant to that determination, based on cases like *Andrade* and *People v. Bracey* (1994) 21 Cal.App.4th 1532 (*Bracey*), demonstrates compliance with former section 1385 but

does not indicate the court meant the dismissal for insufficient evidence "to actually be for some other reason not stated in the minutes."

This argument overlooks several critical points elucidated in *Hatch,* particularly its articulation of the default presumption. The default presumption, absent clear evidence to the contrary, is that a dismissal pursuant to section 1385 is *not* based on application of the substantial evidence standard. (*Hatch*, *supra*, 22 Cal.4th at p. 273 ["Because section 1385 dismissals often are not based on the insufficiency of the evidence as a matter of law, we believe these dismissals should not be construed as an acquittal for legal insufficiency unless the record clearly indicates the trial court applied the substantial evidence standard."].) Further, that courts "need not restate the substantial evidence standard or use certain 'magic words' whenever they determine that the evidence is insufficient as a matter of law" (*ibid.*) does not change the underlying requirement that, for purposes of an acquittal, the dismissal must be based on the application of that standard. The ruling must be "clear enough for reviewing courts to confidently conclude [the trial court] viewed the evidence in the light most favorable to the prosecution and found that no reasonable trier of fact could convict." (*Ibid.*) Moreover, not all dismissals based on an evaluation of the evidence engage the double jeopardy bar. *Hatch* contrasts the distinction between a ruling based on legal insufficiency of the evidence that is functionally equivalent to an acquittal with a dismissal based on a reweighing of the evidence or other justice-related factors that do not preclude retrial. (*Id.* at p. 272.)

Applying these points to the 1996 dismissal order, we observe that although the trial court articulated "insufficient evidence" as the primary basis for its dismissal in furtherance of justice under section 1385, the record does not "clearly indicate[]" that the court applied the substantial evidence standard to conclude the evidence was insufficient as a matter of law to support a conviction. (*Hatch*, *supra*, 22 Cal.4th at p. 273.) Further, there is no indication the trial court viewed the evidence in the light most favorable to the prosecution. On the contrary, the court's reasoning suggests it independently assessed

24

the strength and weight of the evidence and deemed the available evidence insufficient to justify retrying Woodward given the relevant interest of justice factors.

Citing *Bracey* and *Andrade*, the trial court framed its analysis of the case against Woodward in terms of the requirements and relevant considerations for a dismissal in furtherance of justice under former section 1385. In *Bracey*, the court defined a dismissal " 'in furtherance of justice' " as requiring "consideration of the constitutional rights of the defendant and the interests of society represented by the People." (*Bracey*, *supra*, 21 Cal.App.4th at p. 1541; see *Orin*, *supra*, 13 Cal.3d at p. 945.) In *Andrade*, the court listed factors relevant to this consideration, including the weight of the evidence indicative of guilt or innocence, the nature of the crime involved, whether the defendant is or has been incarcerated awaiting trial and length of incarceration, the possibility of harassment, the likelihood of new or additional evidence at trial, and the effect on public safety if the defendant should actually be guilty. (*Andrade*, *supra*, 86 Cal.App.3d at pp. 976–977.)

The trial court used the framework of these decisions to compare the public interest in providing the prosecution with a full and fair opportunity to convict Woodward against the likelihood of the prosecution obtaining a conviction in the absence of new evidence. It considered that having had two opportunities to convict Woodward, the prosecution in both instances "has been unable to prove the defendant guilty beyond a reasonable doubt" and had produced hung juries "with the majority of jurors voting for acquittal." The court linked these results to the "lack of quality" evidence and observed that despite the volume of evidence presented by the prosecution, its "substantive quality . . . did not lend itself to proving the prosecution's contentions."

Specifically, the trial court viewed the hair and fingerprint evidence as "insufficient to convict [Woodward] of murder" because the fingerprints were found on only the outside of the car and "lack[ed] the evidentiary strength usually attributable" to that evidence, while the prosecution could not "conclusively show" the hair found in the victim's car was Woodward's. The court reasoned that "[a]bsent more compelling

25

evidence that places the defendant in the car at the time of the murder, the hair evidence taken together with the fingerprint evidence is insufficient to convict [Woodward] of murder." The court cited other weaknesses in the prosecution's evidence, including the prosecutor's struggle to "cast any doubt on [Woodward]'s veracity" after his testimony in the second trial, and found the theory that Woodward killed Houts out of jealousy was "not [] credible" given there was insufficient proof of jealousy so great that it would have led Woodward to kill Houts.

Following its assessment of the evidence, the trial court identified other factors that supported a dismissal in furtherance of justice. The court explained, citing *Tibbs*, that dismissal would "further the interests of justice by preventing the prosecution from honing its trial strategies and perfecting its presentation of the evidence" and thus "create a risk of conviction through sheer governmental perseverance." It noted that "[a]nother trial would only serve to harass [Woodward]" and found it "reasonable to believe that society will not be endangered by this decision." The court concluded its explanation by stating, "There is simply a lack of evidence on which to convict the defendant. Without new evidence, the result of this case will be the same at each successive trial. Due to the lack of evidence in this case, a jury will never be able to reach a unanimous verdict of guilty. It appears that justice would best be served if the charges were dismissed. [¶] It is therefore the order of this [c]ourt that the case be dismissed in the furtherance of justice for insufficiency of the evidence."

The trial court's discussion of the evidence bears comparison to *Hatch*, which involved a dismissal under former section 1385 after several days of jury deliberations resulted in a deadlock on all counts. (*Hatch*, *supra*, 22 Cal.4th at p. 266.) The trial court in *Hatch* stated in dismissing the case that " 'there is no reason to believe another jury would reach a verdict in this case one way or the other' " and " '[t]he court finds that no reasonable jury would convict the defendant of the charges alleged in the information based on the evidence presented in court.' " (*Ibid*.) The minute order stated that " 'no

26

reasonable jury would convict the defendant of the charges alleged in the information based on the evidence presented in court.' " (*Ibid.*)  In reviewing both the minute order and reporter's transcript of the section 1385 dismissal, the high court found no indication that the trial court had viewed the evidence in the light most favorable to the prosecution and thus intended to dismiss for lack of sufficient evidence as a matter of law.  (*Id.* at p. 274.)

The trial court's findings in the 1996 dismissal order that "the result of this case will be the same at each successive trial" and "[d]ue to the lack of evidence . . ., a jury will never be able to reach a unanimous verdict of guilty" are comparable to those statements assessed by the California Supreme Court in *Hatch* as not implicating the bar on successive prosecution.  Like in *Hatch*, the trial court considered and weighed the evidence presented and concluded it was insufficient to support a unanimous verdict. The trial court's assessment of the substantive quality of the evidence and likelihood that a jury would be able to convict Woodward in the absence of new evidence "suggests a reweighing of evidence rather than an application of the substantial evidence standard." (*Hatch*, *supra*, 22 Cal.4th at p. 274.)

Indeed, in the absence of any indication in the minute order or reporter's transcript that the trial court in *Hatch* had applied the substantial evidence standard, the California Supreme Court characterized the court's "inquiries about additional evidence and . . . remarks on the quality of the trial presentations" (*Hatch*, *supra*, 22 Cal.4th at p. 274) as "an assessment of the strength of the evidence."  (*Id.* at p. 275.)  The Supreme Court also rejected an argument that the trial court's "comments on the improbability of an unanimous verdict of guilt" (*id.* at p. 275) supplied the requisite standard for a finding of legal insufficiency of the evidence, since "the mere likelihood of disagreement among rational men 'is not in itself equivalent to a failure of proof by the State.' "  (*Ibid.*; see also *Tibbs*, *supra*, 457 U.S. at p. 42, fn. 17.)

27

So, too, in this case the trial court's determination that "a jury will never be able to reach a unanimous verdict of guilty" does not imply that no reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. Rather, it suggests the trial court believed that retrial would likely produce yet another non-unanimous result. It further explains the court's finding that "[t]he prosecution has not met its burden of proof in two trials and absent new evidence it will be unable to do so in subsequent trials. Another trial would only serve to harass [Woodward]." In addition, nowhere does the decision state that the trial court viewed the evidence in the light most favorable to the prosecution—a critical consideration articulated in *Hatch.*

Woodward contends the 1996 dismissal order is distinguishable from *Hatch* because it specifically identifies " 'insufficient evidence' " as the basis for dismissal. By contrast, the dismissal order in *Hatch* did not use the term " 'insufficient evidence' "—a fact noted by the California Supreme Court in addressing whether the Ninth Circuit's holding in *Mannes* would alter the high court's double jeopardy analysis. (*Hatch*, *supra*, 22 Cal.4th at p. 276.) Woodward argues *Mannes* is germane because, unlike *Hatch*, it specifically addresses use of the term " 'insufficient evidence' " in context of a section 1385 dismissal. He maintains that by citing to *Mannes* in its written decision, the trial court in this case implicitly adopted its holding and used the term " 'insufficient evidence' " knowing it was a term of art that functioned as an acquittal.

Woodward further points out that courts since *Mannes* have treated the phrase as a term of art with an established meaning. (See *People v. Hampton* (2022) 74 Cal.App.5th 1092, 1105 (*Hampton*) [noting that while there are no " 'magic words' " to establish legal insufficiency, there appears to be no published case wherein a court dismissed for " 'insufficient evidence' " and the dismissal was not found to operate as an acquittal]; see also *People v. Pedroza* (2014) 231 Cal.App.4th 635, 646 (*Pedroza*) [affirming double jeopardy bar where trial court explicitly stated it found the evidence insufficient as a matter of law and had not ruled as a 13th juror]; *Salgado*, *supra*, 88 Cal.App.4th at p. 10

28

[concluding the trial court applied substantial evidence standard in finding (albeit incorrectly) there was " 'not legally sufficient evidence to support a conviction for the carjacking' " and " 'really no evidence to' " establish aiding and abetting the carjacking].)

Although we recognize the force of these arguments, we decide that *Mannes* is not dispositive here. California courts are not bound by decisions of the lower federal courts, even on federal questions. (*People v. Avena* (1996) 13 Cal.4th 394, 431.) Although the California Supreme Court in *Hatch* recognized the Ninth Circuit's holding in *Mannes*, it distinguished it as inapplicable and did not opine on its reasoning. (*Hatch*, *supra*, 22 Cal.4th at p. 276.) Because *Hatch* did not directly address whether a trial court's dismissal for insufficient evidence, in the absence of contrary indication, necessarily implies application of the substantial evidence standard, we are not bound to follow the reasoning of *Mannes*. Nevertheless, we do not view *Hatch* and *Mannes* as entirely irreconcilable under the circumstances of this case.

In *Mannes*, the trial court dismissed murder charges pursuant to section 1385 after a mistrial. (*Mannes*, *supra*, 967 F.2d at p. 1312.) The trial court based the dismissal on "insufficient evidence" of certain elements of the charges (such as that the defendant acted with " 'implied malice,' " and that she was aware at the time of driving drunk that her act carried a high probability of death to herself or others). (*Id*. at p. 1314.) In concluding the dismissal was an acquittal for purposes of double jeopardy, the Ninth Circuit noted there was no indication the trial judge had resolved questions of credibility and rejected the argument that the dismissal was based on " 'weight,' " rather than " 'sufficiency' " of the evidence. (*Id*. at p. 1315.) It explained that " 'insufficient evidence' is a term of art" that—absent clear indication to the contrary—means "the evidence presented at the trial was not legally sufficient to support a conviction for the crime charged, rather than that the judge 'entertained personal doubts about the verdict.' " (*Ibid*.)

29

The presumption articulated in *Mannes* differs from our Supreme Court's direction to *not* presume application of the substantial evidence standard unless the dismissal under section 1385 clearly evidences an intent by the trial court to dismiss for legal insufficiency of the evidence. (*Hatch*, *supra*, 22 Cal.4th at p. 273.) We are, of course, bound by the standard articulated by our Supreme Court. (*People v. Perez* (2020) 9 Cal.5th 1, 13.) Applying the *Hatch* rule, we decline to impute application of the substantial evidence standard into the trial court's dismissal decision based solely on the presumption that it employed " 'insufficient evidence' " as a term of art. (*Hatch*, at p. 276.)

Furthermore, the 1996 dismissal order contains indication to the contrary, including language pertaining to the "weight" of the evidence, the likelihood of new evidence at trial, the possibility of harassment, and the effect on public safety if the charges are dismissed. (See *Andrade*, *supra*, 86 Cal.App.3d at pp. 976–977.) Because *Mannes* treated " 'insufficient evidence' " as a term of art *only in the absence of contrary indication* (*Mannes*, *supra*, 967 F.2d at p. 1315), it appears consistent with both cases to refrain from assuming application of the term of art here. In this context, the variety of considerations that factored into the 1996 dismissal order, including the trial court's examination of factors not relevant to a dismissal for legal insufficiency of the evidence, inject ambiguity into the record as to the intended basis for the section 1385 dismissal. Notwithstanding the court's use of the term insufficient evidence, these "ambiguities" in the 1996 dismissal order provide "clear indication to the contrary" (*Mannes*, at p. 1315) and "make it impossible for us to conclude that the court intended to dismiss for lack of sufficient evidence as a matter of law." (*Hatch*, *supra*, 22 Cal.4th at p. 274.)

This outcome is also consistent with other decisions cited by Woodward, including *Hampton*, *Pedroza*, and *Salgado*. In *Hampton*, like in *Mannes*, there was nothing in the record to suggest a contrary indication for the meaning attributable to the court's use of the term insufficient evidence. The record simply showed that the trial court dismissed

30

the robbery-murder special-circumstance allegation for "insufficient evidence" on the prosecutor's request after the jury convicted the defendant for first degree murder and robbery but could not reach a verdict as to the allegation. (*Hampton*, *supra*, 74 Cal.App.5th at pp. 1096, 1097.) The same is true for *Pedroza* and *Salgado*. Both cases involved express findings of legal insufficiency, with the trial court in *Pedroza* going so far as to reject the prosecutor's argument that it "sat as a 13th juror when ruling on the new trial motion" and explaining its conclusion that it found "there was insufficient corroboration as a matter of law" and retrial was barred under United States Supreme Court precedent. (*Pedroza*, *supra*, 231 Cal.App.4th at p. 643.)

Nor are we persuaded that the trial court's citation of the United States Supreme Court's decision in *Tibbs* indicates the section 1385 dismissal was for legal insufficiency of evidence based on application of the substantial evidence standard. The written decision cites *Tibbs* as support for the trial court's decision that dismissing the murder charge would further the interests of justice by preventing successive attempts at conviction and risking "conviction through sheer governmental perseverance." (*Tibbs*, *supra*, 457 U.S. at p. 41.) While it is true that the passages of the opinion cited by the trial court come under the United States Supreme Court's discussion of double jeopardy and the principle that the prosecution cannot be afforded " 'another opportunity to supply evidence which it failed to muster in the first proceeding' " (*ibid.*), the trial court's written decision mentions only those passages in *Tibbs* that discuss the risks of repeated prosecution. These references equally support a decision based on furthering the interests of justice, since "the possible harassment and burdens imposed upon the defendant by a retrial" is among the factors in furtherance of justice that courts consider under section 1385. (*Orin*, *supra*, 13 Cal.3d at p. 946; see *Andrade*, *supra*, 86 Cal.App.3d at p. 977.) Indeed, *Hatch* specifically recognized the relevance of this factor to a section 1385 dismissal. (*Hatch*, *supra*, 22 Cal.4th at p. 273.)

We decide that the 1996 dismissal order does not satisfy the rule articulated in *Hatch* for construing a section 1385 dismissal as an acquittal based on a finding of insufficient evidence as a matter of law. The reasons for the dismissal as set forth in the trial court's minute order and written decision suggest the court found insufficient evidence to reach a unanimous verdict and justify retrial under section 1385's broad standard for dismissal, based on factors including the poor quality of evidence, unlikelihood that new evidence would be presented at another trial, risk of wearing down Woodward through repeated prosecutions, and harassment of Woodward. There is no clear indication in the record that the trial court viewed the evidence in the light most favorable to the prosecution and concluded that no rational trier of fact could have found the defendant guilty beyond a reasonable doubt. (*Hatch*, *supra*, 22 Cal.4th at p. 273.) We therefore cannot construe the section 1385 dismissal order as an acquittal. We conclude the constitutional protection against double jeopardy does not bar the refiling of the murder charge against Woodward.

## III. DISPOSITION

Let a peremptory writ of mandate issue directing respondent superior court to vacate its August 22, 2023 order granting the motion to dismiss on double jeopardy grounds and to enter a new order denying the motion. Upon issuance of the remittitur, this court's stay order is vacated.

_____
                Danner, Acting P. J.

I CONCUR:

_____
Bromberg, J.

**H051311**
*People v. Superior Court (Woodward)*

Lie, J., Concurring:

I join the court in its application of *People v. Hatch* (2000) 22 Cal.4th 260 (*Hatch*). Our adherence to *Hatch* is compelled by *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal. 2d 450. The California Supreme Court has observed that on questions of federal law, however, a state high court "operate[s] as an intermediate court and not as a court of last resort." (*People v. Lopez* (2019) 8 Cal.5th 353, 366 (*Lopez*).) " 'When emergent [United States] Supreme Court case law calls into question a prior opinion of [a state] court, that court should pause to consider its likely significance before giving effect to [its] earlier decision.' [Citation.] This is so even when the high court's decision does not directly address the continuing validity of the [state court's] rule . . .; the high court's guidance may nonetheless erode the analytical foundations of the old rule or make clear that the rule is substantially out of step with the broader body of relevant federal law." (*Id.* at pp. 366–367.) I write separately to explain my concern that decisions of the United States Supreme Court have eroded the analytical foundations of the rule announced in *Hatch*.

As Justice Ketanji Brown Jackson wrote this term for a unanimous United States Supreme Court, "it is well established that whether an acquittal has occurred for purposes of the [Fifth Amendment's] Double Jeopardy Clause is a question of federal, not state, law." (*McElrath v. Georgia* (2024) 601 U.S. ___ [144 S.Ct. 651, 659] (*McElrath*).) For double jeopardy purposes, federal law has long defined an acquittal broadly. (*Evans v. Michigan* (2013) 568 U.S. 313, 318 (*Evans*); see *id.* at p. 320 [holding that defendant was acquitted by the trial court's "determination that the State had failed to prove its case," despite errors of law informing the directed verdict].) When the state has failed its " ' "one complete opportunity to convict" ' " (*Sattazahn v. Pennsylvania* (2003) 537 U.S. 101, 115), "an 'acquittal' includes 'a ruling . . . that the evidence is insufficient to convict,' a 'factual finding [that] necessarily establish[es] the criminal defendant's lack of criminal culpability,' and *any other* 'rulin[g] *which relate[s]* to the ultimate question of*

*guilt or innocence*' " (*Evans*, at p. 319, italics added, quoting *United States v. Scott* (1978) 437 U.S. 82, 98, fn. 11 (*Scott*).) "These sorts of substantive rulings stand apart from procedural rulings that may also terminate a case midtrial." (*Evans*, at p. 319.) "[T]he relevant distinction is between judicial determinations that go to 'the criminal defendant's lack of criminal culpability,' " which bar retrial, "and those that hold 'that a defendant, although criminally culpable, may not be punished because of a supposed' procedural error," which do not. (*Id.* at pp. 323–324.) "Culpability (*i.e.*, the 'ultimate question of guilt or innocence') is the touchstone . . . ." (*Id.* at p. 324.) Even the lone dissenter in *Evans* agreed that "the Court's 'double-jeopardy cases have consistently' defined an acquittal as a decision that ' "actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged." ' " (*Id.* at p. 336 (dis. opn. of Alito, J.).) Notably absent from the breadth of the constitutional definition of "acquittal" is any requirement that the court making the ruling find the evidence insufficient as a matter of law, drawing all inferences in favor of the prosecution.

Under controlling federal law, it is immaterial that the trial court's evaluation of the evidence here was a dismissal "in the interest of justice" under Penal Code section 1385[1] and not a directed verdict under section 1118.1. " '[L]abels'—including those provided by state law—'do not control our analysis . . . .' [Citation.] Thus, it is not dispositive whether a factfinder 'incanted the word "acquit" '; instead, an acquittal has occurred if the factfinder 'acted on its view that the prosecution had failed to prove its case.' " (*McElrath*, *supra*, 601 U.S. at p. ___ [144 S.Ct. at p. 660], quoting *Evans*, *supra*, 568 U.S. at pp. 322, 325; see also *United States v. Sisson* (1970) 399 U.S. 267, 270, 288 (*Sisson*) [treating "arrest of judgment" as an acquittal because "bottomed on factual conclusions . . . made on the basis of evidence adduced at the trial"].)

---

[1] Undesignated statutory references are to the Penal Code.

It is also immaterial—given the jury's inability here to return a guilty verdict—that the trial court did not rule that the evidence was insufficient as a matter of law. A final judicial determination that the evidence was insufficient as a matter of law is of course sufficient to constitute an acquittal. (See, e.g., *Sisson*, *supra*, 399 U.S. 267 [dismissing appeal for lack of jurisdiction, where trial court's arrest of judgment after jury's guilty verdict was in essence a directed acquittal based on the trial evidence].) It does not follow, however, that a determination of legal insufficiency is constitutionally *necessary* to an acquittal.[2] Only after a conviction has the United States Supreme Court conditioned the Double Jeopardy bar on a judicial determination that the evidence was "legally insufficient." (See *Tibbs v. Florida* (1982) 457 U.S. 31, 45–47 (*Tibbs*) [holding that reversal of a conviction based on a reviewing court's disagreement with the jury's weighing of the evidence does not bar retrial under the Double Jeopardy Clause unless the evidence were insufficient as a matter of law].)

Against this backdrop, the *Hatch* court understood that it was announcing a new rule—reflecting the court's "belie[f] [that section 1385] dismissals should not be construed" to foreclose retrial "unless the record clearly indicates that the trial court applied the substantial evidence standard" and its "proper[] balanc[ing of] the competing interests embodied in the constitutional prohibitions against double jeopardy." (*Hatch*, *supra*, 22 Cal.4th at p. 273.) The innovation of *Hatch* was to presumptively authorize

---

[2] A number of United States Supreme Court precedents examining district court rulings under rule 29 of the Federal Rules of Criminal Procedure naturally address the district court's application of rule 29's legal insufficiency standard. But this is a matter of federal rule and not constitutional doctrine, the Federal Rules of Criminal Procedure having no equivalent to section 1385. California courts, on the other hand, are at once obligated (like federal district courts under rule 29) to direct a verdict of acquittal when the evidence is insufficient as a matter of law (§ 1118.1) and authorized to dismiss in the interest of justice (§ 1385).

retrial after a section 1385 acquittal when the prosecution at trial had failed to secure a conviction. (*Ibid*.) A defendant could overcome the presumption that "the court [despite its dismissal] did *not* intend to . . . foreclose reprosecution" by demonstrating that the court "viewed the evidence in the light most favorable to the prosecution and found that no reasonable trier of fact could convict." (*Ibid.*) And *Hatch* required the trial court in dismissing the proceeding to "make [its ruling] clear enough for reviewing courts to confidently conclude [it] viewed the evidence in the light most favorable to the prosecution and found that no reasonable trier of fact could convict." (*Ibid.*) In making legal insufficiency (or at least a trial court's view of it) the linchpin under the Double Jeopardy Clause, the *Hatch* court extrapolated from *Tibbs*, *supra*, 457 U.S. 31 that "[w]here a court merely 'disagrees with a jury's resolution of conflicting evidence and concludes that a guilty verdict is against the weight of the evidence,' . . . a reversal or dismissal on that ground does not bar retrial." (*Hatch*, *supra*, 22 Cal.4th at p. 272.)

But the United States Supreme Court's much broader definition of an acquittal later reaffirmed in *Evans* and most recently in *McElrath* makes clear that the procedural posture of *Tibbs* was critical to the United States Supreme Court's holding in that case. The jury in *Tibbs* returned a guilty verdict from which the defendant obtained relief based not on the legal insufficiency of the evidence but the weight of that evidence—" 'a determination . . . that a greater amount of credible evidence supports one side of an issue or cause than the other.' " (*Tibbs*, *supra*, 457 U.S. at pp. 37–38.) The Florida Supreme Court's reversal of the conviction under state law represented mere "disagree[ment] with [the] jury's resolution of conflicting evidence" on the convicted defendant's appeal. (*Id*. at p. 42; see also *id*. at pp. 37–38 [distinguishing "weight of the evidence" reversal under Florida law from reversal for "insufficient evidence"].) The *Tibbs* court accordingly framed its holding as grounded in the conviction and the defendant's election to challenge that conviction by an appeal necessarily contemplating retrial: "[T]he Double Jeopardy Clause does not prevent an appellate court from granting a *convicted* defendant

4

an *opportunity* to seek acquittal through a new trial." (*Id*. at p. 45, italics added; see also *id.* at p. 45, fn. 22 [analogizing a defendant's motion for new trial following guilty verdict]; cf. *Evans*, *supra*, 568 U.S. at p. 326 [distinguishing a defendant's mistrial motion, which effectively "consents to a disposition that contemplates reprosecution," unlike a defendant who moves for acquittal]; *People v. Eroshevich* (2014) 60 Cal.4th 583.)  The court in *Tibbs* derived its holding from the long-standing rule that "a criminal defendant *who successfully appeals a judgment against him* 'may be tried anew . . . for the same offence of which he had been convicted.' " (*Tibbs*, at pp. 39–40, italics added, quoting *United States v. Ball* (1896) 163 U.S. 662, 672; see *Tibbs*, at p. 40, citing *North Carolina v. Pearce* (1969) 395 U.S. 711, 721 [explaining "the premise that the original conviction has, at the defendant's behest, been wholly nullified and the slate wiped clean"].)  *Tibbs* distinguished the high court's contrary decisions in *Burks v. United States* (1978) 437 U.S. 1 and *Greene v. Massey* (1978) 437 U.S. 19 as representing "a narrow exception from the understanding that a defendant who successfully appeals a conviction is subject to retrial" where " 'the reviewing court has found the evidence legally insufficient' to support conviction." (*Tibbs*, at pp. 40–41.)  The Florida high court's reversal based on the weight of the evidence rather than its sufficiency did not meet that narrow exception.  (*Id.* at pp. 37–38.)  In short, *Tibbs* arose from a distinct strand of Double Jeopardy jurisprudence focused not on acquittals but on convictions and on the assent to retrial—unless acquittal on retrial could be assured as a matter of law— presumed by a convicted defendant's appeal.  (*Id.* at pp. 42–43.)

" 'A reversal based on the weight of the evidence' " as in *Tibbs*, however, " 'can occur only after the State both has presented sufficient evidence to support conviction *and has persuaded the jury to convict*.' " (*Mannes v. Gillespie* (9th Cir. 1992) 967 F.2d 1310, 1315, italics added (*Mannes*).)  *Tibbs* is thus inapplicable here, where the People failed twice to secure a guilty verdict, leading the trial court to exercise its discretion under section 1385 to independently assess the trial evidence of Woodward's culpability.

Here, unlike in *Tibbs,* Woodward was not "a convicted defendant" appealing for "an opportunity to seek acquittal through a new trial." (*Tibbs, supra,* 457 U.S. at p. 45, fn. omitted.) "[T]here was no occasion to set aside a verdict as 'against the weight' of the evidence, since no verdict was reached." (*Mannes, supra,* 967 F.2d at p. 1315, quoting *Tibbs, supra,* 457 U.S. at pp. 42–43.) Absent a conviction followed by an appeal or motion for new trial that would implicate *Tibbs,* I respectfully submit that *Evans* and *McElrath,* in reaffirming post-*Hatch* the broad definition of acquittal first articulated in *Scott,* would have us assess only whether the trial court's dismissal under section 1385 " 'relate[s] to the ultimate question of guilt or innocence.' " (*Evans, supra,* 568 U.S. at p. 319; *McElrath, supra,* 601 U.S. at p. ___ [144 S.Ct. at p. 658].)

At bottom, our application of *Hatch* is no more than a determination that the trial court's dismissal—expressly based on "the insufficiency of the evidence"—failed to conform to a state-law standard even though it is an acquittal as defined by the United States Supreme Court. To my mind, this makes the acquittal here indistinguishable from those in *Evans* (where the trial court based its dismissal on the erroneous belief that the charged offense required proof of another element) and *McElrath* (where the jury's acquittal on one count was nullified, along with a conviction on another count, under state law "repugnancy doctrine"). Even where the trial court is "egregiously" wrong, its error does not exempt the acquittal from the double jeopardy bar. (*Evans, supra,* 568 U.S. at p. 318.) "[T]he fact that 'the acquittal may result from erroneous evidentiary rulings or erroneous interpretations of governing legal principles,' . . . affects the accuracy of that determination, but it does not alter its essential character." (*Scott, supra,* 437 U.S. at p. 98.)[3] *McElrath* made explicit that the states' " 'primary authority for

___

[3] For example, the trial court's dismissal of sexual assault charges in *Hatch* followed defense argument that no jury would believe 15-year-old "Doratee L.'s 'behavior [to be] consistent with someone who was being pressured and forced into doing something against their will' " (*Hatch, supra,* 22 Cal.4th at p. 266)—an argument that betrays some incomprehension of both juvenile executive functioning and the nuance of

6

defining and enforcing the criminal law' and '. . . regulat[ion of] procedures under which [their] laws are carried out' " did not extend to "whether the Double Jeopardy Clause recognizes an event as an acquittal." (*McElrath*, *supra*, 601 U.S. at p. ___ [144 S.Ct. at p. 660].)

That the acquittal here was by a judge and not, as in *McElrath*, by a jury is constitutionally irrelevant, given the juries' inability to convict.  In *United States v. Martin Linen Supply Co.* (1977) 430 U.S. 564, for example, the high court rejected the government's contention "that only a verdict of acquittal formally returned by the jury should absolutely bar further proceedings and that '[o]nce the district court declared a mistrial and dismissed the jury, any double jeopardy bar to a second trial dissolved.' " (*Id.* at p. 572.)  As the court instructed, " 'The constitutional requirement of a jury trial in criminal cases is primarily a right accorded to the defendant.' [Citations.]  Any Government right to demand a jury verdict is limited to that afforded by [federal rule] (jury trial waivable with the consent of the Government) and, of course, can be qualified by authority granted the trial judge" by rule.  (*Id.* at pp. 574–575, fn. 13; see also *Sisson*, *supra*, 399 U.S. at p. 288.)

I agree that the court's dutifully exacting scrutiny of the trial court's dismissal order here yields "contrary indications" vitiating the otherwise unambiguous "insufficiency of the evidence" conclusion—suggesting that the trial court did not uniformly view the evidence in the light most favorable to the prosecution.  But beyond *Evans* and *McElrath*, it bears noting how foreign our examination is to our customary appellate function:  Under *Hatch*, we apply a presumption in favor of a petitioner for extraordinary relief and not in favor of the respondent court's 2023 judgment or

coercion within otherwise consensual relationships.  And joining the court's application of *Hatch* here, I have no reason to believe that the trial court in 1996—had it anticipated the new evidence that now prompts the petitioner to reprosecute—would have intended to foreclose retrial.

7

1996 acquittal; and we accord no deference to the respondent court's contrary finding on the trial court's "intent." Consequently, our decision today turns on how deeply and transparently the trial judge chose to scrutinize the trial evidence, with the through-the-looking-glass result that rote adoption of a party's "insufficiency of the evidence" recital is necessarily an acquittal (see, e.g., *People v. Hampton* (2022) 74 Cal.App.5th 1092, 1097), while the painstaking critique of evidence presented to two deadlocked juries is not.

But for our continuing duty to follow *Hatch*, I would instead conclude the section 1385 dismissal here is an acquittal that bars retrial under *Evans* and *McElrath*. Because *Evans* and *McElrath* "erode the analytical foundations" of *Hatch* (*Lopez*, *supra*, 8 Cal.5th at p. 367), I respectfully urge the California Supreme Court to reexamine the continuing vitality of *Hatch*'s narrow definition of an acquittal under federal double jeopardy principles.

Lie, J.

**H051311**
*People v. Superior Court (Woodward)*

Trial Court:    County of Santa Clara

Trial Judge:    Hon. Shella Deen

Counsel:        Jeffrey F. Rosen, District Attorney, Kaci R. Lopez, Supervising
                District Attorney, and David R. Boyd, Deputy District Attorney for
                Petitioner.

                No appearance for Respondent.

                Nolan Barton Olmos & Luciano, LLP, Daniel L. Barton and Evan C.
                Greenberg for Real Party in Interest.

**H051311**
*People v. Superior Court (Woodward)*